(Decided 14th December, 1888.)

THE FARMERS PHOSPHATE COMPANY (a body corporate) *vs.* JOHN GILL, Assignee of SYMINGTON BROS. & CO.

*Vendor and Vendee—Sale of Goods—When Title passes— Conditional Sale—Trover.*

The assignors of the defendant, by J. H. C. acting as broker for both vendor and vendee, made a contract in Baltimore with the plaintiff for the purchase from the latter of a cargo of about 500 tons of rock phosphate "delivered alongside buyers' vessel at Dale's Creek" in South Carolina, at a given price per ton. "Rock guarantied 60 per cent. bone phos. of lime on dry basis ; should rock run below 60 per cent., proportionate allowance to be made." The rock was to be weighed in Baltimore as landed, by sworn weigher at seller's expense, and paid for by note at four months from date of bill of lading, adding interest, or by cash on arrival. The buyers chartered a vessel to bring the cargo from Dale's Creek, the charterers paying freight, &c.; and upon the completion of the vessel's loading the master made out a bill of lading receipting for the cargo from the seller to be delivered at Baltimore to the buyers or to their assignees, and delivered it to the seller who indorsed it to J. H. C. who indorsed

Farmers' Phosphate Co. *vs.* Gill.

and delivered it to the buyers. The buyers had the cargo insured for their own benefit. Upon the arrival of the cargo at Baltimore it was weighed and delivered to the buyers, but before the price was paid by note or cash, they made an assignment for the benefit of their creditors. In an action of trover brought by the seller against the assignee of the buyers, it was HELD:

1st. That the phosphate became the property of the vendees, and was at their risk from the moment it was put on board their vessel.

2nd. That the sale was not made a conditional one by the stipulations in the contract, one requiring the cargo to be weighed in Baltimore, and the other requiring its quality to be ascertained there.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the following prayer:

That if the jury find from the evidence in this case that the cargo of River Rock was sold to the Messrs. Symington under the contract offered in evidence, dated 15th Feb., 1887, and that on the arrival of the said cargo the cash was not paid for the same, nor the notes given as called for in said contract, and that there has been no waiver of the terms of said contract on the part of the plaintiff, then the plaintiff is entitled to recover the value of said goods.

And the defendant offered the following prayer:

If the jury shall find the execution of the contract of sale, the charter party and bill of lading offered in evidence, and that the phosphate was delivered on the vessel mentioned in the charter party in South Carolina, and that the bill of lading was delivered to Messrs. Symington on the 14th day of May, 1887, and that the discharge of the cargo of phosphate to the Symingtons in Baltimore, began some days before May 31, 1887, and

was completed on said last named day, and that freight was paid to the amount of $500 on May 26th, and to the amount of $857.80 on the 31st day of May, and that the weighing had been completed and the analysis made on or before May 31, 1887, and that cargo of phosphate was insured to the amount of $2,625 on the 21st day of April, 1887, at their own expense and on their own behalf, and the chemist's analysis had been made before May 31, 1887, and that the cargo was allowed to be received by the Messrs. Symington from the vessel, without any demand for the cash or note by the plaintiff or its agent, until several days after the cargo was all discharged, then the plaintiff cannot recover.

The Court (BROWN, C. J.,) rejected the prayer of the plaintiff, and granted the prayer of the defendant. The plaintiff excepted, and the verdict and judgment being against it, appealed.

The cause was argued before MILLER, IRVING, BRYAN, and McSHERRY, J.

*Fielder C. Slingluff,* for the appellant.

The sale was a conditional one, the condition being the payment in cash, or the delivery of the four months' note as soon as the cargo was weighed, and its value ascertained on arrival at the port of Baltimore. And accordingly the appellant presented one prayer covering this theory; provided, however, that the jury should find that there had been no waiver of the terms of the contract on the part of the appellant. This prayer vas based on the decision in the case of *Powell vs. Bradlee,* 9 *G. & J.,* 146, (*Brantly's Ed.*)

Unless there was some waiver of the terms of the contract, the case is on all-fours with that of *Powell vs. Bradlee.* There was no such waiver. The cargo had to be weighed at the expense of the appellant, in Balti-

more, to ascertain its value, and to undergo an analysis by a chemist to ascertain if it contained the amount of bone phosphate of lime, called for in the contract, before its final acceptance by the buyer. The chemist made his report on the 30th of May. The weight was ascertained on the 31st of May, and on that very day the bill was made out and presented to the purchaser.

The presentation of the bill was demanded for payment, and this bill could not have been presented a day sooner than it was, because the value of the cargo was not known until that day. In *Powell vs. Bradlee* the delivery of the flour had been made to the purchaser, but the cash for which the contract called had not been demanded at the time of the delivery. There was proof that it was the usage when articles of merchandise were sold for cash, to deliver the merchandise without demanding the cash at the moment of delivery; and in granting the third prayer on page 162, (*Brantly's Ed.*) the Court say, if the jury believe the delivery was made in accordance with such usage, then there was no waiver of the cash payment; "and the delivery of the goods did not vest the title in the vendees, if the jury find they did not make payment for said goods."

And this Court in affirming this prayer, says: "It does not appear that the Court has committed any error in their third instruction. * * * If the delivery was unconditional and without reference to the usage, the title passed. If it was made with reference to the usage, which was a question of intention, then the title did not pass if the cash was not paid when thereafter demanded." *Page* 175, (*Brantly's Ed.*) This case is approved in *Duval vs. Myers*, 2 *Md. Chan. Dec.*, 368, (*Brantly.*) "There can be no doubt that if the sale was for cash no title passed to the purchaser without payment of the purchase money, unless the vendor

waived the condition of payment." *Page* 373. This same doctrine is well recognized in the case of *Whitney vs. Eaton,* 15 *Gray,* 225. And an examination of this case will show that in all respects it is like the case at bar. The appellee has contended that the sale of the cargo of fertilizer was not a sale conditioned on the giving of the note or the payment of the cash, and that title passed to the vendees because the payment by cash or by note was not to be made at Dale's Creek at the time the goods were delivered to the vendor's vessel, but was to be made in Baltimore after the analysis showed the goods were of the quality bought, and the weighmaster ascertained the quantity of the cargo, and that the delivery at Dale's Creek was a completed delivery. But if the contract had read that the goods were to be paid for in cash or by note when delivered at Dale's Creek, and such payment had not been made, then the condition precedent had not been complied with and the case would then fall within the rule settled in *Powell vs. Bradlee,* and the cases cited. The distinction is shadowy. The delivery on board the vendor's vessel did not complete the delivery, and did not give title to the vendees.

Something more was to be done, viz., the goods were to be analyzed and the amount of them ascertained, and then the payment was to be made. This is the exact state of facts in *Whitney vs. Eaton,* 15 *Gray,* 225. This was a case of replevin against assignees in insolvency. The goods had been sold by a broker, and were delivered to the defendant. They were to be weighed or "tared," under the defendant's direction. This took several days, and as soon as the plaintiff ascertained the weight, he demanded the note called for in the contract. It was not given, and the Court, through Chief Justice Shaw, say: "It was a conditional sale and delivery; payment by note was a

condition precedent, and until compliance with it the property did not pass." And they refer to *Blanchard vs. Child,* 7 *Gray,* 155; *Burbank vs. Crooker,* 7 *Gray,* 158.

If the delivery at Dale's Creek was a completed delivery, and gave title to the vendees as against their condition precedent of payment by cash, or in note, the converse of the proposition must be true that they must pay for the goods irrespective of quality or quantity. They could not get absolute title against the vendor by the delivery, so as to waive a condition of the contract in their favor, without waiving conditions not in their favor; otherwise there would be no mutuality in the contract.

*D. K. Este Fisher,* and *William A. Fisher,* for the appellee.

MILLER, J., delivered the opinion of the Court.

On the 4th of June, 1887, the firm of Symington Bros. & Co., of Baltimore, manufacturers of fertilizers, made an assignment of all their property to Mr. John Gill for the benefit of their creditors, and the question in this case is whether a cargo of South Carolina River Rock Phosphate passed to the assignee under this assignment. The question is raised by an action of trover brought by the Farmers Phosphate Company, the vendor of the Symingtons, against Mr. Gill, their assignee, for the conversion of this property. The facts essential to be stated, and about which there seems to be no dispute are as follows:

The contract of sale made in Baltimore on the 15th of February, 1887, by Mr. Cottman, who was the broker for both vendor and vendees, is in these terms: "Sold to Messrs. Symington Bros. & Co. for account of Farmers Phosphate Company. A cargo of about five (500)

hundred tons undried River Rock Phosphate, delivered alongside buyer's vessel at Dale's Creek @ $4.50 per ton, 2240 lbs. For delivery latter part this month or first of March, 1887. Rock guaranteed 60 per cent. bone phos. of lime on dry basis; should rock run below 60 per cent. proportionate allowance to be made. Rock to be weighed here as landed, by sworn weigher at seller's expense. Payable by note to buyer's order, at four (4) months from date of bill of lading, adding interest, or cash on arrival here."

"J. H. COTTMAN."

The Symingtons then, on the 12th of March, 1887, chartered a vessel to bring this cargo from Dale's Creek, Coosaw River, S. C., to Baltimore, the charterers paying freight, &c. The vessel arrived at Dale's Creek the latter part of April, and completed the lading of her cargo on or before the 7th of May. On this last mentioned day the master made out a bill of lading whereby he acknowledged the receipt of the cargo from the Farmers Phosphate Company to be delivered at Baltimore "unto Symington Brothers & Co., or to their assigns." This the master delivered to the Phosphate Company who endorsed it "deliver to the order of J. H. Cottman," (the broker who effected the sale), and he endorsed it "deliver to the order of Symington Brothers & Co.," and delivered it to them on the 14th of May, one week after its date. It also appears that the Symingtons insured the cargo for their own benefit.

The vessel arrived at Baltimore on the 24th of May and immediately commenced discharging her cargo at the wharf of the Symingtons, they having paid the freight thereon. As the discharge proceeded the rock was weighed, and there was also an analysis of it made by a chemist which showed that it was above the standard fixed by the contract. The discharge was

completed on the 31st of May, and on the same day Cottman made and sent to the Symingtons a bill for the phosphate. Not receiving any reply for several days he telephoned them on the morning of the day on which they had executed their assignment to know whether they were going to pay for the cargo in cash or by note, and received a reply that they had something to say to him on the subject. He immediately went to their office and was surprised to learn they had made an assignment. He then asked them to give him their note for the cargo, but they declined to do this, as they did not think it would be right for them to do so after they had assigned their property for the benefit of all their creditors.

Subsequently, on the 9th of June, the Phosphate Company by their counsel made demand on Mr. Gill, the assignee, for the property, and on the following day the Symingtons wrote and mailed a letter to the company, enclosing their note for the cargo made out in accordance with the terms of the contract of sale, but the company declining to receive this note, returned it to the assignee, and brought this action of trover.

Upon these facts the question is, was the *title* to this property vested in the Symingtons when they executed their assignment, or was it still in the Phosphate Company, the vendor? The question is an interesting one, and has been exceedingly well argued. On the part of the appellant company it is contended, that by the terms of the contract the sale is conditional, and that no title vested in the buyers because the condition of paying by note or in cash had not been complied with or waived. On the other hand, counsel for the appellee deny that such is the proper construction or effect of the contract, and contend that the title passed by delivery of the cargo on board the buyers' vessel at Dale's Creek, and, if not by such delivery alone, it

clearly did when accompanied or followed by insurance for the buyers' benefit, and transmission to them of the bill of lading.

We think the law is well settled that where a buyer purchases or orders a specific quantity of goods to be shipped to him from a distant place, and the seller segregates and appropriates to the contract the specified quantity by delivering them to a vessel designated by the buyer, or, in the absence of such designation, to a common carrier, the mere fact that the contract contains a stipulation that they are to be paid for by note or in cash *on arrival*, does not prevent the title from passing or make either payment or arrival a condition precedent thereto. In such case the goods become the property of the vendee, and are at his risk from the time they are put on board the vessel. *Magruder & Bro. vs. Gage*, 33 *Md.*, 344; *Appleman vs. Michael & Bro.*, 43 *Md.*, 281; *Dutton vs. Solomonson*, 3 *Bos. & Pull.*, 584; *Fragano vs. Long*, 4 *Barn. & Cress.*, 219; *Alexander vs. Gardiner*, 1 *Bing.* (*New Cases*), 671. In the case last cited there was a stipulation in the contract that the goods were to be paid for "by a bill at two months from the date of landing." The goods were shipped from Sligo in Ireland to London, and while in transit were lost or damaged by shipwreck. In an action by the vendor against the vendee for goods bargained and sold, this term of the contract was relied on by the defendant, but TINDAL, C. J., said, "the object of that stipulation was merely to fix the time of payment, and not to make the landing a condition precedent," and added that for that point it is enough to refer to the decision in *Fragano vs. Long*. In this view all the other Judges concurred.

If, therefore, there was no other stipulation in the contract, the case would be free from difficulty. But there are two other clauses introduced for the pur-

pose of ascertaining the exact amount to be paid by the vendees. The first stipulates that the cargo shall be weighed in order to find out the number of tons to be paid for at the stipulated price, and the second requires its quality to be ascertained. As to the latter provision it must be noticed that it gives the vendees no right to reject the rock if it did not come up to the prescribed standard, but simply secures to them a proportionate abatement in the price if it fell below it. What then is the effect of these stipulations on the transfer of title? This presents the only real difficulty in the case. Where the agreement is for the sale of goods, and also for the performance of other things, it becomes important to ascertain whether the performance of any of these things is meant to precede the vesting of title or not. This is a question of the construction of the agreement, and it may often happen that the parties have expressed their intention in a manner that leaves no room for doubt; when, however, they have not done so in express terms, the intention must be collected from the whole agreement, and for this purpose, (as stated by Lord BLACKBURN in the recent edition of his book *on Sales*) the English Courts have, since the beginning of the present century, adopted two rules of construction, both derived from the civil law. The *first* is that where by the agreement the vendor is to do any thing to the goods for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall (in the absence of circumstances indicating a contrary intention,) be taken to be a condition precedent to the vesting of the property. The *second* is that where any thing remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring or

testing the goods, where the price is to depend on the quantity or quality of the goods, the performance of these things also shall be a condition precedent to the transfer of the property, *although the individual goods be ascertained and they are in a state in which they ought to be accepted.* The learned author approves the first rule, but suggests that the second was hastily adopted from the civil law without adverting to the great distinction made by the civilians between a sale for a certain price in money and an exchange for any thing else, a distinction which is not recognized by the English law. He remarks that in general, weighing, &c. must, from the nature of things, be intended to be done before the buyer takes possession of the goods, but that is quite a different thing from intending it to be done before the vesting of the property; and he intimates very strongly that in his judgment this second rule has no foundation in reason. 2 *Blackburn on Sales*, (2d *Eng. Ed.*,) 127, 128. The view thus taken by Lord BLACKBURN is supported by the very vigorous opinion of COCKBURN, C. J., in *Martineau vs. Kitching*, (*Law Rep.*, 7 *Queen's Bench*, 449,) in which he declared he would not give way to a rule which appeared to him to militate against principle and to be inconsistent with common sense and convenience; and he insisted that if you can gather from the whole circumstances of the transaction, that the buyer and seller intended that the property should pass, and the price should be afterwards ascertained by measuring or weighing, there was nothing in principle, in common sense or practical convenience, to prevent that intention from having effect. The other Judges did not dissent, but thought the case before them could be decided on other terms of the contract without determining whether there was any inexorable rule of law, that the property will not pass where the price or

amount to be paid remains to be ascertained by weight or measurement.

In this country Mr. *Newmark* in his recent work on *Sales of Personal Property*, after stating the English rule, subjects it to the qualification that it applies in cases where there is *no evidence* tending to show the *intention* of the parties to make an absolute and complete sale, without performance of the acts of weighing or measuring. *Newmark on Sales, sec.* 74. We have also American decisions, by Courts of the highest authority, which hold broadly that the performance of these acts, where provided for in the contract, is not essential to the transfer of title. Such, as we understand. it, is the decision of the Supreme Court in *Leonard, et al. vs. Davis, et al.*, 1 *Black,.* 476. In that case there was a sale, by written contract, of a large quantity of pine logs lying in and near a boom, which it was supposed would make about 1,444,000 feet of lumber in board measure. The contract specified one price per thousand for those logs that were afloat in the boom, and another for those on the bank and in the marsh near the boom. It was also a part of the contract that the logs should be counted, measured and scaled by the boom-master. The suit was by the vendors against the vendees upon this contract for the purchase money of all the logs. The Court below instructed the jury that the contract was executory, and that the title did not pass until the logs had been measured, but the Supreme Court reversed this ruling and held that it was a sale without condition; that the measurement was simply to ascertain the amount to be paid by the vendees, and that the title to the logs passed to them as soon as the contract was signed, and there had been a symbolical delivery thereunder. Again in *Hatch vs. Oil Co.*, (100 *U. S.*, 135,) the same Court reiterated the doctrine that where

it appears that there has been a complete delivery of the property in accordance with the terms of sale, the title passes, although there remains something to be done in order to ascertain the total value of the goods at the rate specified in the contract. To the same effect are the New York cases of *Crofoot vs. Bennett*, 2 *Coms.*, 258, and *Burrows vs. Whitaker*, 71 *N. Y.*, 291.

But taking the rule with the qualification stated in *Newmark on Sales,* we find in this case abundant evidence to show that it was the intention of the parties, that the title should pass before the goods had been weighed and tested in Baltimore. The buyers chartered a vessel to bring the cargo from South Carolina to Baltimore, insured it for their own benefit, and became responsible for the freight. But what is more important, and more significant as indicating the intention of the vendor company, they had a bill of lading made out by the master as soon as the vessel was loaded at Dale's Creek, stating on its face that the cargo was to be delivered to the vendees or to their assigns, and procured the same to be delivered to the Symingtons within a week from its date. Now, it may be true that the transmission of a bill of lading may not in all cases be absolutely conclusive of title as between vendor and vendee, or consignor and consignee, yet the implication is almost irresistible that the motive of the vendor, when the bill is taken in the name of the vendee, is to vest title in the latter free from all conditions. *Key vs. Cotesworth*, 7 *Excheq.*, 595, *and note.* As a general rule a bill of lading operates a transfer of the property to the party in whose favor it is drawn and to whom it is delivered. Citation of authority on this point is unnecessary. If the vendors in this case had wished to prevent the property from passing, and to retain the right to deal with it after shipment and while *in transitu*, they should by the bill of lading

Farmers' Phosphate Co. *vs.* Gill.

have made the cargo deliverable to their own order, and have forwarded the same to an agent of their own with directions to retain it until the cargo had been finally delivered, weighed, tested and paid for in Baltimore. *Ex parte Banner, Law Rep.*, 2 *Ch. Div.*, 288. But this they did not do, and all the circumstances of the transaction show it was the intention of both parties to have the cargo become the property, and be at the risk of the vendees from the moment it was put on board the carrying vessel. In fact it was for the manifest interest of the vendors that this should be the case; for if the cargo had been lost by shipwreck of the vessel, they could have made the vendees responsible therefor in an action for goods bargained and sold, and there would have been no insuperable difficulty in the way of their recovery.

Upon the whole case, therefore, our opinion is that this cargo became the property of the Symingtons from the time it was delivered on board their vessel at Dale's Creek, and consequently passed under their deed of assignment. The case is unlike that of a sale "for cash on delivery" considered in *Powell vs. Bradlee*, 9 *G. & J.*, 220, and we think it is also distinguishable in material facts and circumstances from that of *Whitney vs. Eaton*, 15 *Gray*, 225, so much relied on by counsel for the appellant.

It follows, therefore, from the undisputed facts of the case, that this action cannot be maintained, and consequently there has been no ruling prejudicial to the appellant, made by the Court below in its action upon the prayers.

*Judgment affirmed.*

(Decided 14th December, 1888.)