## MURPHY & HUTT *vs.* THE AMERICAN CAN COMPANY.

*Sales—Assent to Delivery to Vessel not Designated—Acceptance of Bill of Lading—Evidence.*

The purchaser of goods directed them to be delivered to a certain ship captain and ship for transportation to him  Upon the failure of this vessel to bring them, the purchaser soon afterwards directed them to be delivered to another vessel. The goods were delivered to the captain first mentioned, and the bill of lading sent to the purchaser, who kept the same without making any objection, and would have accepted the goods if they had been transported, but the vessel was wrecked in the course of its voyage. *Held*, that the purchaser had ratified the de-delivery of the goods to that vessel as made, and is estopped to sue for non-delivery, since the delivery to the carrier passed the title to the goods and put the risk of transportation on the purchaser.

*Decided May 17th, 1907.*

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Wm. Ewin Bonn* and *Fleet W. Cox,* for the appellants.

*Chas. Markell, Jr.,* (with whom were *Gans & Haman* on the brief) for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Superior Court of Baltimore City in favor of the appellee, as defendant below, in an action of *assumpsit* for an alleged failure to deliver certain tin cans sold by it to the appellants.

It appears from the record that in January, 1903, the appellants, who are packers at Mt. Holly, Va., purchased from the appellee a lot cf tin packing cans, with the wooden cases in which they are transported, to be delivered f. o. b. at Baltimore, Md. Before the end of March, 1903, the appellants had received and paid for all of the cans except one thousand cases. On March 31st desiring to get the remainder of the cans they sent the contract price for them to the appellee in a letter which said: "Enclosed find check for five hundred and eighty dollars for which please deliver to schooner 'Irene,' Captain Frank Gibson, 1,000 cases and cans No. 3 ℔." On April 4th the appellee acknowledged the receipt of the letter and the check was paid in due course. In the letter acknowledging the receipt of the check the appellee informed the appellants that Captain Gibson had called at its office on that day and said he would take the cans on board as soon as he had finished getting some salt loaded which he was to take with him, but the vessel had not yet reached the appellee's dock. Gibson did not in fact take the cans on that trip and explained to the appellants when he returned to Mt. Holly

that his failure to bring them was due to the fact that the vessel could not carry both the salt and the cans on the same trip.

The appellants on April 11th answered the appellee's letter of the 4th saying in their reply, after referring to Gibson's failure to get the cans, "the schooner 'Isabel' will be with you about the 15th and bring all of the 3,500 cans now due that she can bring. I have instructed the captain with your help to secure a vessel to bring bal. freight 1 ¼ cents, but if he can't get a vessel for that pay 1 ½ cents. If you cannot secure a vessel I will send for balance shortly. If convenient for you to hold the lot until the last of this month I will have a vessel there with ties that will bring them. As soon as I knew that the Irene had not gotten them I wrote to a captain, that I had sent with ties, to get them but I am afraid the letter reached Baltimore too late to catch him this trip."

On April 13th Captain Gibson called at the appellee's office in Baltimore saying that the appellants had sent him for the cans, but not saying what vessel he had with him. He was told to go to the factory and get them. The appellee's manager Daugherty testified that he did not hesitate to direct the cans to be delivered to Gibson because the appellants had not only directed the appellee to make such delivery to him by their letter of March 31st but had enclosed in their own letter a sealed letter directed to Gibson to be delivered to him, which he being illiterate requested Daugherty to read for him and which on being read was found to contain a direction to Gibson to get the cans from the appellees. Daugherty further testified that the appellee had received no notice from the appellants of the revocation of Gibson's authority nor any request to send the goods only by any particular schooner, and Gibson had, for four or five years, been hauling cans for the appellants and others.

Gibson, having been thus authorized on April 13th by the appellee to go to the factory and get the cans, loaded them on the schooner Progress which he commanded on that trip and started with them for Mount Holly, Va. Shortly after

the Progress left the harbor of Baltimore she encountered high winds which increased to a storm and she was driven ashore above Annapolis and the cans were damaged and the appellants refused to receive them.

The appellee on the 13th of April promptly advised the appellants by mail of the delivery of the cans to Gibson and enclosed the bill of lading in the letter.    On April 17th, the appellee again wrote to the appellants informing them of the receipt of a telephone message that the schooner Progress, Captain Frank Gibson, had gone ashore in a storm near Annapolis.    On April 21st after the receipt from the appellee of the letters of the 13th and 17th the appellants wrote acknowledging the arrival of the letters and bill of lading, but denying that they had authorized the cans to be shipped by the Progress and asserting that Gibson knew that he could not have taken the goods on board with their consent.  Other correspondence between the parties followed without changing their attitude to each other, the appellants refusing to accept the cans or to acknowledge Gibson's authority to get them from the appellee, and finally bringing the present suit.

Robert Murphy, the member of the appellant firm who conducted the correspondence and intercourse with the appellee, testified that he was not at home when the appellee's letter of the 13th of April with the bill of lading arrived, that he received that letter and the one of the 17th on his return.    He did not reply to the letter with the bill of lading before April 21st because he did not think it necessary to do so, as he said that he had not ordered the appellee to deliver the cans to Gibson and did not think he had anything to do with them. He admitted that he had sent Gibson for the cans on April 4th and did not afterwards notify the appellee that his authority to get them had been withdrawn.   He further admitted that if the cans had arrived in good order on the Progress with Capt. Gibson he would have accepted them.   When asked why, when he got the bill of lading issued without his authority by Gibson, he did not return it to the appellee, he replied "Because if the cans came what was the use of return-

ing it, I was going to receive them ;" and further said that if the cans came he was going to accept the bill of lading, and if they did not come he did'nt want it.   He subsequently said that he did not retain the bill of lading for more than two days after he had received it on his return home but he admitted that he did not make any objection to it until he heard the goods were lost.   Capt. Gibson testified positively that he was directed by the appellants to go for the cans not only the first time when he failed to bring them but also the second time when he did get them.   Mr. Murphy on re-examination denied the truth of Gibson's statement and for the purpose of this opinion Murphy's testimony must be taken to be true.

Upon that state of the case the learned Judge below, as we think correctly, granted the defendant's tenth prayer instructing the jury that it appeared from the plaintiffs' own testimony that after the cans were shipped on the schooner Progress the bill of lading was sent to the plaintiffs and was accepted by them with full knowledge of the manner in which the cans were shipped and that the title to them thereby became vested in the plaintiffs and therefore their verdict must be for the defendant.   The granting of that prayer necessarily involved the rejection of the plaintiffs' first and second prayers which were based upon the opposite theory of the case.

The record contains two bills of exceptions.   One is to the action of the Court in permitting Daugherty, the appellee's manager, to testtfy to the contents of the letter sent through him by the appellants to Captain Gibson directing him to get the cans from the appellee.   The other exception is to the Court's rulings on the prayers.

The question upon which the whole case depends is that of the ownership of the cans at the time of the accident by which they were damaged.   The suit is not one in tort against the appellee for causing the injury to the cans, it is for the failure to deliver them.   The loss caused by the accident must fall upon the one who owned the cans when they were injured.   They had been purchased and paid for by the appellants f. o. b. at Baltimore and were delivered to Gibson for

their account at that place. If therefore the appellants either affirmatively authorized the delivery to him or accepted the bill of lading when it was received by them or so dealt with it as to ratify the delivery they must for the purposes of this case be regarded as having been the owners of the goods when the schooner went ashore, and must bear the loss.

The testimony to which we have referred together with other evidence in the record goes far toward establishing an affirmative authorization by the appellants of the delivery of the cans to Gibson, but we do not regard it as essential to pass upon that proposition. Their conduct after receiving the bill of lading and the information by letter of the delivery of the cans to Gibson, as disclosed by the testimony of Murphy, one of the members of the appellant firm, shows an acceptance of the goods in transit or in any event such a ratification of their delivery to Gibson as to estop the appellants from maintaining this suit.

The dates of the letters constituting the correspondence between the parties and the testimony of the witnesses show that it ordinarily requires from two to three days for the transmission of letters by mail from Baltimore to Mount Holly.

The letter from the appellee to the appellants informing them of the delivery of the cans to Gibson and containing the bill of lading which disclosed the particulars of the shipment with the name of the vessel, was mailed to the appellants at Baltimore on April 13th and should have reached Mt. Holly on the 15th or 16th and it was not answered until the 21st. The appellant Murphy asserts that he was not at home when the letter arrived and that he does not think that he retained it more than two or three days before replying to it. If he intended to repudiate Gibson's authority to take the goods or to reject the delivery of them to him it was his duty to promptly notify the appellee of that fact. A bill of lading represents the goods described in it and an acceptance of the bill by the consignee therein named or the endorsee thereof when it has been issued to the order of another person amounts to an acceptance of the goods represented by it. *Bank*

*of Bristol v. B. & O. R. R.*, 99 Md. 661; *B. & O. R. R.* v. *Wilkins*, 44 Md. 11; *Farmers Phosphate Co.* v. *Gill*, 69 Md. 537; 24 *A. & E. Encycl. of Law*, 2nd ed. 1085, 6 *Cyc.* 417, 418.

Murphy's own admissions when on the stand conclusively show that after he had been fully informed as to the person and vessel to whom the cans had been delivered not only made no objection to the delivery but held on to the bill of lading with the intention of receiving the goods when they arrived and made objection only after he had been informed that the schooner had gone ashore with the cans on board. If the appellants had not authorized the delivery to Gibson or to Gibson on that particular schooner this conduct of theirs after receipt of the letter of April 13th with the bill of lading would under the circumstances of this case have amounted to a ratification of the delivery.

There was no reversible error in permitting Daugherty to testify as to the contents of the letter sent by the appellants through him to Gibson. In the first place Gibson being unable to read or write the order or direction therein contained was communicated to him only through the reading of the letter. In the second place no injury resulted to the appellants from the admission of the evidence because the contents of the letter amounted simply to a repetition of what the appellants had written directly to the appellee in their letter of March 31st which was already in evidence.

For the reasons stated in this opinion the judgment appealed from must be affirmed.

*Judgment affirmed with costs.*