## EMMA ADOLPHSON AND ANOTHER v. BURT HIXON.[1]

May 21, 1943.

No. 33,402.

*T. J. Mangan,* for appellant.
*John I. Davis,* for respondents.

PETERSON, JUSTICE.

This is an action to recover rent under a written lease. Defendant counterclaimed for damages claimed to have been caused to his cattle by plaintiffs' breach of an oral contract, made during the term of the lease, to construct a barn. There was a directed verdict for plaintiffs.

The term of the lease was from March 1, 1940, to March 1, 1941. There was a renewal for the following year.

On October 6, 1940, while the written lease was in force and effect, defendant, the lessee of plaintiffs' farm in Swift county,

[1]Reported in 9 N. W. (2d) 719.

went to Bancroft, Iowa, for the purpose of inducing plaintiffs to construct a new cattle barn on the farm before winter set in. Apparently plaintiffs had promised to construct the barn about a year prior to that time but did not do so. Defendant claims that plaintiffs agreed to start building the barn on the following Monday, October 7. In a conversation in which plaintiffs, defendant, and his wife participated, plaintiffs stated that they would have a barn built immediately. The work was to be done by a Mr. Johnson, a building contractor residing in Bancroft. The precise time when work would be begun was dependent on arrangements to be made with Johnson for doing the work. Defendant's wife testified: "She [referring to one of the plaintiffs] said it was to be put up immediately, she said the carpenter [Johnson] would start on Monday, but 'we will go to the carpenter and *find out first,*' then immediately, she said, it would be." (Italics supplied.) Defendant went with one of the plaintiffs to consult with Mr. Johnson while his wife visited with the other plaintiff. Johnson told defendant that he probably would not be able to start work immediately and advised defendant to get a Mr. Sorenson at Murdock, Minnesota, to do the work. Defendant and his wife then returned to the farm.

On October 7, after their return, defendant saw Mr. Sorenson relative to building the barn. Sorenson told him that he had some other work to do before starting the construction of the barn. Pursuant to an understanding with defendant, Sorenson communicated with plaintiffs and Johnson to complete arrangements under which he was to do the work. A period of 18 days elapsed before the arrangements were completed. These provided that an old shed on the premises should be torn down and that the materials should be used in the construction of the new barn. On October 25, after Sorenson had completed the arrangements with plaintiffs, he started work. First, he tore down the old shed. Then he commenced the construction of the barn. On November 11, while the work was in progress, a sleet, snow, and windstorm of unprecedented severity and of several days' duration commenced,

causing much loss of human life and animals and the destruction of property. Defendant had no shelter for his cattle because the old shed had been torn down and the new barn had not been completed. Because of exposure to the storm, some of his cattle died and others were damaged.

There was no dispute as to the amount of rent due. The sole controversy related to the counterclaim. Defendant claimed that plaintiffs' promise was to start work on Monday, October 7; that they breached the promise by delaying the commencement of the work from October 7 to the 25th, a period of 18 days, and that the damages sustained by him were caused by the delay. Plaintiffs contended that, because they were not obligated under the lease then in full force and effect to construct the barn, the oral contract purporting to bind them to do so was without consideration and consequently unenforceable; that any damages sustained by defendant were caused by his own negligence in failing to exercise due care to avoid the injury which occurred to his property; and that the delay in starting the construction of the barn was not due to any act of plaintiffs, but solely to that of defendant in making the arrangements under which the delay occurred.

The court below in directing a verdict for plaintiffs for the amount of the rent and denying defendant's counterclaim said:

"Mr. Hixon stated that they had told him that they would start immediately, start the following Monday, but he went with Miss Adolphson to this carpenter Johnson to find out when he could start the work, and further than that, Johnson told him that he couldn't commence right away,—this is Mr. Hixon's testimony— that he couldn't start right away, and directed Mr. Hixon to go to one Sorenson up here and see if he could start work. Mr. Hixon becomes a party to this whole transaction as to getting this barn finished apparently as soon as possible, so that stopped short of the claim that they had promised to do it immediately, to start at once, the following day, and that takes out any question as to her [plaintiff's] liability in spite of the storm."

We think that the evidence establishes as a matter of law that plaintiffs' promise to build a barn immediately was contingent upon their being able to make suitable arrangements with Johnson to do the work, because they not only said that they first would have to find out from him if he would do the work, but one of the plaintiffs and defendant went to Johnson to take up the matter with him. When Johnson told them that he could not do the work immediately and suggested that defendant get Sorenson, defendant agreed to that proposal. In effect, defendant undertook to arrange with Sorenson for performance of plaintiffs' promise. The parties clearly intended that performance of plaintiffs' promise should be according to whatever arrangements defendant made with Sorenson.

We deem it necessary to discuss only one question, *viz.*, whether plaintiffs were excused from responsibility for the delay in starting work on the barn because defendant himself had undertaken to look after the arrangements with Sorenson to do the work. Decision in the affirmative controls the result and makes discussion of other points unnecessary.

The only performance of plaintiffs' promise to which defendant was entitled was that for which he arranged with Sorenson. This he received. In that view he got the performance intended by the parties, and there was no breach of contract, but performance thereof according to its terms.

Furthermore, as the court below held, the delay of which defendant complains was caused by his own act in making the arrangements for building the barn. The delay was due in part to the time consumed in carrying on necessary negotiations to complete the arrangements and in part to the arrangements themselves that Sorenson was not to start work immediately, but only after he had completed some other work he had to do. Defendant was solely responsible for the arrangements because he undertook to make them. Plaintiffs did not agree to protect defendant from the consequences of his own acts. It makes no difference that the delay was not caused by fault on defendant's part. It is enough

that it was caused by his act. A promisor is not liable for delay in performance of a contract for which the promisee is responsible. Davis v. Crookston W. P. & L. Co. 57 Minn. 402, 59 N. W. 482, 47 A. S. R. 622; American Graphic Co. v. M. St. P. & S. S. M. Ry. Co. 44 Minn. 93, 46 N. W. 143; Dodge v. Rogers, 9 Minn. 209 (223); Snead & Co. Iron Works v. Merchants L. & T. Co. 225 Ill. 442, 80 N. E. 237, 9 L.R.A.(N.S.) 1007; Wallis v. Inhabitants of Wenham, 204 Mass. 83, 90 N. E. 396, 17 Ann. Cas. 644, and Annotation; 12 Am. Jur., Contracts, pp. 914, 957, §§ 351, 381. See 3 Williston, Contracts (Rev. ed.) p. 1952, § 677. The delay having been caused by the arrangements made with Sorenson, responsibility therefor was defendant's as the party who made them. Plaintiffs are not liable under the circumstances.

Affirmed.