C. W. BLOMQUIST AND COMPANY, INC. *v.*
CAPITAL AREA REALTY INVESTORS
CORP. ET AL.

[No. 106, September Term, 1973.]

*Decided December 4, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* and *Michael G. Trainer* and *Duckett, Orem, Christie & Beckett* on the brief, for appellant.

*Joe M. Kyle* for appellees.

BARNES, J., delivered the opinion of the Court.

The decisive question in this appeal from the Circuit Court for Montgomery County (Barrick, J.) is whether the appellant and plaintiff below, C. W. Blomquist and Company, Inc. (Blomquist), the purchaser in a written contract for the sale of land owned by the appellee, Capital Area Realty Investors Corp. (Capital), was the cause of the delay of settlement beyond the six-month period specified in the addendum to the contract of sale. Judge Barrick, in a trial without a jury, concluded that Blomquist was the cause of the delay and was not entitled to a return of the $5,000 deposit made by it when the contract was executed. He entered a judgment nisi in favor of Capital for costs, upon which a final judgment was entered on March 5, 1973, from which Blomquist perfected a timely appeal to this Court.

The facts — for the most part the subject of a stipulation between the parties — are not in dispute. In November, 1971, Blomquist and Benjamin R. Dieudonne (Dieudonne or agent), a real estate broker representing Capital, began negotiations in regard to the sale of a 2.718 acre tract of land located on the Old Columbia Pike in Silver Spring, Montgomery County (the subject property). The agent told Blomquist that the land adjoining the subject property had been "sold" to the Burtonsville Volunteer Fire Department and that settlement for that adjoining land would take place in approximately 60 days. After Mr. C. W. Blomquist, the president of Blomquist, had looked at the subject property, Dieudonne prepared a proposed written contract for the purchase of that property for $175,000, with a deposit of $5,000, a cash payment of $65,000 at the time of settlement (of which the $5,000 deposit would be a part), and a deed of trust of approximately $110,000 with interest of 8% per annum. The proposed contract had no specific provision that

time was of the essence of the contract. Mr. Blomquist testified that he had advised Dieudonne that Blomquist "wanted one major thing, and that was that . . . the settlement of the Burtonsville Fire Department to take place prior to my settlement in order to give me sufficient time to settle on this property . . . [b]ecause I felt that if — the Burtonsville Fire Department should of course need water; if they got water there would be a better chance for me to obtain it." Mr. Blomquist also advised Mr. Dieudonne that Blomquist wanted "a particular period of time in which we knew we would have to settle by that period of time, so it wouldn't tie the money up indefinitely" because Blomquist had funds in a profit-sharing plan it wished to invest and "wanted to get it out right away instead of just sitting in a checking account . . . ."

Mr. Dieudonne then prepared an add ndum to the proposed contract of sale, which read as follows:

"1. Property being sold and conveyed is all that residue owned by Capital Area Realty Investors Corp. west of old Columbia Pike and south of proposed relocation of Briggs Chaney Road; identified in Liber 3473, Folio 688. This excludes Parcel B, Valley View. Property is also identified by plat attached and becomes a part of this contract and property is outlined in red. Property contains approximately 2.718 acres.

2. It is understood the balance of the property has been sold to Burtonsville Fire Department, Inc. and settlement hereunder is to be made within thirty (30) days from the date of Sellers settlement with Burtonsville Fire Department, Inc. Purchaser to have right to cancel this contract and have deposit returned in full if settlement cannot be held within six (6) months of Sellers ratification of this contract.

3. Property is sold subject to the existing month-to-month tenancy of the residential improvements."

Capital accepted the proposed contract, with the addendum on November 17, 1971, and Blomquist paid the $5,000 deposit. On or about April 17, 1972, Mr. Blomquist telephoned Mr. Dieudonne to ascertain whether Capital would be able to settle by May 17, 1972 (the last day of the six-month period); and Mr. Dieudonne stated that "he thought we would be able to settle sometime around that period of time but he could not give me a definite settlement date." Mr. Dieudonne told Mr. Blomquist that settlement had not occurred for the Burtonsville Fire Department land. Mr. Blomquist indicated to him that he needed time to arrange for settlement and repeated that the Burtonsville property must be settled for first.

On May 11, 1972, Blomquist received the following letter from Mr. Dieudonne, dated May 9, 1972:

> "According to your contract dated November 10, 1971, for the purchase of approximately 2.718 acres of land at 13820 Old Columbia Pike, Silver Spring, Md., please be advised that settlement is being concluded with Montgomery County for the Burtonsville Fire Department purchase. (See attached exercise of option.)
>
> "The deed from Capital Area Realty Investors Corp. should be recorded by the county authorities in the near future. The sellers will be ready to settle with you within the next 30 days at your convenience. Please advise this office of your place of settlement and the approximate date.
>
> "I am enclosing a copy of Executive Order # R.W. 18-72 authorizing the purchase of the fire department property and a copy of the letter from the County Right of Way Division.
>
> "Please call me if I can assist with further details prior to settlement."

The enclosed copy of Executive Order No. RW 18-72, dated April 11, 1972, indicated that a hearing had been held on January 3, 1972, concerning the fire station project and that the option to purchase the land, described by metes and

bounds, for $40,000 "is hereby accepted." The Executive Order also provided that the County Attorney "is hereby directed to take all necessary steps to acquire the property."

After receiving the letter of May 9, Mr. Blomquist telephoned Mr. Dieudonne and "indicated to him that the letter stated they were going to settle — they hoped to settle within thirty days, but again did not say they were going to settle by May 17th, which my contract called for." Mr. Dieudonne stated that the Burtonsville land had not been settled for and, when Blomquist asked "how would I be able to go to settlement on May 17th if the Burtonsville deal had not settled," Mr. Dieudonne replied, "they were doing the best they could."

Blomquist, on May 17, 1972, received a hand-delivered letter from Mr. Dieudonne, dated May 16, 1972, reading as follows:

"According to paragraph 2 of the addendum of your contract to purchase approximately 2.718 acres of land at 13820 Old Columbia Pike, Silver Spring, Maryland please be advised that the sellers have settled on the Fire Department property and the deed has been recorded. A copy of the recorder's receipt is enclosed herewith." [1]

On May 17, 1972, Mr. Blomquist wrote Mr. Dieudonne:

"Due to the fact we have not settled by May 17, 1972, I am exercising paragraph 2, the addendum of the sales agreement, in order to cancel the contract. As specified by this addendum I would like for you to return the deposit in full to my office as soon as possible."

In response to questions on cross-examination, Mr. Blomquist stated:

---

1. The deed from Capital to the Burtonsville Volunteer Fire Department for the land adjoining the subject property is dated and acknowledged on May 10, 1972.

"A I could have performed had settlement taken place by May 17th."

\* \* \*

"A . . . I could have settled on May 17th."

Judge Barrick, in a well-considered written opinion, after setting forth the facts, stated:

"It is obvious from the stipulations of counsel and testimony presented that Blomquist did not wish to agree to settlement for the subject property until he was sure that the Fire Department settlement had been consummated. It is obvious also that he felt that having a fire department owning the adjoining property would be advantageous to him. Furthermore, he did not wish to prolong this deal indefinitely, as he wanted to get his money working. Consequently, the six-month provision was added to the agreement. This was a period in which it was contemplated by all parties that settlement of the Fire Department property could be effected, and was not a length of time in which settlement had to be held. It was not induced by any special circumstances nor negotiated by the parties. There is nothing that is disclosed by the terms of the agreement or by the conduct of the parties that indicates that time was of the essence. The Court therefore finds that as far as the six-month provision is concerned, time was not of the essence.

"Even if we were to assume that time was of the essence, Blomquist was notified on May 9, 1972 that the option for the Fire Department property had been accepted by Montgomery County and that the County Attorney was directed to take the necessary steps to acquire the property. This certainly could have been relied upon to the extent that Blomquist could take the necessary steps in order to prepare for his settlement of the subject property by May

17th. Furthermore, he stated in his testimony that he made commitments for some of the money to be used in financing the subject property in the early part of May, because he felt that this settlement would not go through. It appears to the Court that the seller has complied with all the necessary provisions of the agreement and that the settlement did not go through because Blomquist had commitments for the purchase price and did not want to go through with the deal. It was his actions that prevented the settlement, and he cannot rely on them to void the contract."

Blomquist raises three questions on appeal, *i.e.*, that the trial court erred:

1. In not construing the second paragraph of the addendum as a condition precedent;
2. In concluding that time was not of the essence to the contract; and
3. In concluding that Blomquist was the cause for the delay in the settlement beyond the six-month period.

We have concluded that it will not be necessary to decide the first two questions Blomquist presents since we are of the opinion that, even assuming, *arguendo*, that Blomquist is correct in its contentions in regard to the first two questions, the lower court was correct in holding that Blomquist was the cause for the delay in the settlement beyond the six-month period. Our affirmance of the judgment below on this basis is decisive of the appeal.

As we have indicated, we shall assume for the sake of the argument, but without deciding, that the second paragraph of the addendum was a condition precedent to performance by Blomquist, the purchaser, and that time was of the essence of the contract of sale by virtue of circumstances and conduct of the parties even though the contract did not state that time was of the essence and even though there is much force in the decision of the lower court to the contrary.

The prior settlement for the Burtonsville Fire Department purchase of property adjoining the subject property *did, in fact, occur prior* to the six-month period expiring on May 17, 1972. It occurred on May 10, 1972. Blomquist was notified by Dieudonne by the letter of May 9, 1972, that Montgomery County had, on April 1, 1972, exercised its option to purchase the Burtonsville property and that "settlement is being concluded" for that purchase. Mr. Dieudonne requested Blomquist to advise his office "of your place of settlement and the approximate date" and also offered his assistance to Blomquist with "further details prior to settlement." The letter clearly indicated that Capital expected to go forward with settlement for the subject property. In our opinion, this was sufficient to put Blomquist upon notice that settlement on the adjoining property was imminent and that settlement for the subject property would be going forward within the specified six-month period. Blomquist was advised by the Dieudonne letter, dated May 16, 1972, and hand delivered on May 17, that the Burtonsville property settlement had been concluded, a copy of the recorder's receipt for the deed (dated and acknowledged on May 10, 1972) being enclosed. The lower court properly found that Capital as the seller was prepared to go forward with the settlement and that the settlement for the subject property did not take place because of the actions of Blomquist, it having made other commitments for the purchase money and having lost interest in the purchase of the subject property.

Blomquist, however, seeks to rely upon the well-established principle of law, expressed in the Restatement of Contracts § 323, at 484 (1932) that:

"(1) Where a party to a contract materially changes his position in reasonable reliance on the other party's

    (a) manifestations of unjustified lack either of intention or of ability, or

    (b) apparent inability without justification to perform a condition or a promise for an

agreed exchange, a subsequent tender of correct performance by the latter party is inoperative to prevent the occurrence of a breach of contract by him at the time when performance becomes due."

*See* 4 Corbin on Contracts § 974, at 914-16 (1951). *See also Schneider v. Saul*, 224 Md. 454, 460-61, 168 A. 2d 375, 379 (1961) and prior Maryland cases and other authorities therein cited.

Ordinarily, in order to constitute anticipatory repudiation, there must be a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract. As Judge Collins, for the Court, stated in *Weiss v. Sheet Metal Fabricators*, 206 Md. 195, 203-04, 110 A. 2d 671, 674-75 (1955):

"There is no doubt that these statements did not amount to a definite and specific anticipatory breach or repudiation of the contract. It was said in *Friedman v. Katzner*, 139 Md. 195, 201, 114 A. 884, 886: 'A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract (Williston on Contracts, § 1288), and may be inferred from the "refusal of a party to recognize the existence of a contract, or the doing of something inconsistent with its existence" (6 R.C.L., 1016); and when "in anticipation of the time of performance one definitely and specifically refuses to do something which he is obligated to do, so that it amounts to a refusal to go on with the contract, it may be treated as a breach by anticipation, and the other party may, at his election, treat the contract as abandoned, and act accordingly. This principle is well settled and applied in many cases. [Cases cited.]" But refusal to perform must be positive and unconditional, Williston on Contracts, § 1324; 39 Cyc. 1431.' *Farmers' Phosphate Co. v. Gill*, 69 Md. 537, 16 A. 214, 1 L.R.A. 767; *Fast Bearing Co. v. Precision*

*Development Co.*, 185 Md. 288, 309, 44 A. 2d 735; Williston on Contracts, (Revised Edition), Sec. 1324, Corbin on Contracts, Sec. 974; Restatement of Contracts, Sec. 318(a); *Wonalancet Co. v. Banfield*, 116 Conn. 582, 165 A. 785; *Cory & Son, Ltd. v. City of London*, 2 All. Eng. 584 (KBD); *Goldwyn Distributing Corp. v. Brenneman*, 3 Cir., 13 F. 2d 105."

See *String v. Steven Development Corp.*, 269 Md. 569, 307 A. 2d 713 (1973).

This general rule, however, is subject to the rule set forth in § 323 of the Restatement of Contracts, already quoted. *See also* § 280(1) of the Restatement of Contracts.

Professor Corbin in § 974 of 4 Corbin on Contracts, at 914-16 (1951) states the rule as follows:

"It has been thought that a mere expression of inability to perform in the future is not a repudiation of duty and cannot be operative as an anticipatory breach. Of course, the expression of a doubt as to whether the ability to perform in accordance with the contract will exist when the time comes, is not a repudiation. A statement of inability to perform, however, may be so made as to justify the other party in understanding it as a definite repudiation. There may be cases in which expressions of inability by one party or an existing appearance of inability on his part to perform will justify the other party in nonperformance of his part of the contract or in materially changing his position so as to make performance impossible, without at the same time operating as an anticipatory breach, for which an action for damages could be maintained."

*See Viramontes v. Fox*, 5 N. M. 275, 335 P. 2d 1071 (1959).

Blomquist's difficulty in the present case is not with the legal principle he relies upon, but is with the lack of facts to make it applicable. Capital never repudiated the contract of sale, nor did it indicate that it had doubts that settlement

would take place within the six-month period. On the contrary, the letter of May 9, 1972, from Capital's agent, Mr. Dieudonne, clearly indicated that settlement was contemplated and requested the designation by Blomquist of the place of settlement and the approximate date. It gave Blomquist sufficient time to take the necessary steps to prepare for settlement; and it should have been ready, willing, and able to complete the settlement on its part by May 17, 1972. Indeed, on cross-examination — as we have indicated above — Mr. Blomquist testified: "I could have performed had settlement taken place by May 17th. . . . I could have settled on May 17th." In sum, it was the fault of Blomquist that settlement did not occur on or before May 17. Blomquist, itself, repudiated the contract by its letter of May 17, 1972, cancelling the contract and requesting a return of the $5,000 deposit. Blomquist having breached the contract of sale is not entitled to the return of its deposit. *Alois v. Waldman*, 219 Md. 369, 149 A. 2d 406 (1959).

*Judgment affirmed, the appellant to pay the costs.*