WEISS ET AL., COPARTNERSHIP TRADING AS WEISS MOTOR COMPANY *v.* SHEET METAL FABRICATORS, INCORPORATED

[No. 62, October Term, 1954.]

196

*Decided January 20, 1955.*

*Motion for rehearing filed February 19, 1955, denied March 17,1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*David P. Gordon* and *Robert Hammerman,* with whom were *Gordon & Feinblatt,* on the brief, for appellants.

*Daniel S. Sullivan, Jr.,* for appellee.

COLLINS J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the appellants, Weiss Motor Company, for one cent damages in a case tried before the trial judge without a jury.

The agreed statement of facts is essentially as follows. The appellants are a partnership operating a large Ford agency in Baltimore City. The appellee, Sheet Metal Fabricators, Inc., is a corporation engaged in the metal fabricating business. At the trial below Gordon Bonner, a salesman, Raymond Jenkinson, manager of the stock department, and William Weiss, a partner, testified for the appellants. The gist of their testimony follows. Mrs. Bulah Flora, an employee of appellee, on February 24, 1953, telephoned Mr. Bonner, advising him that the appellee was about to buy a new stake bodied truck. It had a 1947 Dodge stake truck to trade in and she wanted a quotation at once on the truck which was needed on a job to replace the old truck which was to be traded. Bonner replied that as it was late in the day he would

inspect the truck offered in trade at appellee's plant the next morning and then work up a price figure.

Accompanied by Jenkinson, Bonner went to look at the old truck at appellee's plant. He talked to Mrs. Flora and learned from her what special equipment was required, and that the truck would be needed at 3 P. M. the following day, February 26, 1953, if appellants' price was accepted. Bonner told Mrs. Flora that he would telephone her after returning to the office to get the prices for the several extras. Within a short time Bonner called Mrs. Flora and told her that the gross price would be $2,418.95. An allowance would be made on the old truck of $700.95 and the net price to the appellee would be $1,718.00. Within a short time Mrs. Flora called Bonner and said that in order to make the deal the price would have to be a little lower. After a discussion with Mr. Weiss, Bonner again called Mrs. Flora and quoted a reduced price of $2,358.95. After a short pause in the conversation, Mrs. Flora advised him that the appellants' offer was accepted. Thereupon, Bonner had his long hand draft of the quotation typed, using the revised figures as shown on appellants' Exhibit No. 1. This exhibit showed that the following was to be supplied:

"In reply to your inquiry we are pleased to submit our price on 1—1952 Ford-F-5-158" wheel base 12 ft. stake equipped with the following:

(6)

Clipper Six Engine
P. A. Wipers
Auxiliary Springs
750 x 20 x 8 Ply Tires
Oil Filter
Directional Signals Front & Rear
Hot Water Heater
R. H. Mirror

2358.95
~~2418.95~~

We will accept in trade and allow you on your 1947 Dodge Stake 700.95 against our quoted price or a net difference of $1658.00
~~$1718.00~~
Maryland Sales Tax and transfer of Tags are not included in the above quotation."

Bonner delivered Exhibit No. 1 immediately and was handed appellee's purchase order, which is appellants' Exhibit No. 3.

The substantial part of the purchase order follows:

"Quantity            Description            Price

Ford Truck—1½T stake—158″ wheel base with Heater and defroster, directional signals, right hand mirror and 750-20, 8 ply tires.

NET PRICE (INCLUDING TRADE IN ALLOWANCE)            $1658.00

Delivery—3 P. M. February 26, 1953

QUALITY: Materials will be subject to inspection at our plant. Rejects will be returned at our expense.

DELIVERY: Delivery must be effected within reasonable time of dates specified on order.

CORRESPONDENCE: An acknowledgement of receipt of this order is necessary. * * *

SHEET METAL FABRICATORS, INC.

Approved BULAH FLORA

Ship To: Will pick up."

Appellants installed the items listed on the purchase order on the only chassis of this description which they had in stock. They painted the stake body (which was purchased from another company as they had none in stock) red to conform with the chassis. The truck was ready for delivery at the specified time. The papers to affect the transfer of title were drawn but the appellee sent no one to pick up the truck.

A few days later Bonner telephoned Mrs. Flora and was told by her that there had been some mixup and Christian Klapproth, appellee's president and general

manager, wanted further information about the truck. Jenkinson then took some sales literature to appellee's plant and left it with Klapproth. Jenkinson testified that he was not told to withhold action on the purchase order. A day or so later Klapproth called the appellants' sales room and left a message that he was cancelling the order for the truck. This message was confirmed by a letter dated March 5, 1953, from appellee to appellants, which stated: "This will confirm our phone conversation cancelling our order no. 2551, dated 2-25-53, which was sent to you in error." Appellants have made no effort to sell the truck to anyone else. Weiss testified that he had never talked to Klapproth on the telephone; that he never agreed to cancel the order for the truck; that the truck which was made ready was the only one of that type in stock and probably was the only one of that type in Baltimore City. The 1953 model Ford truck was not announced until sometime later.

Mr. Klapproth and Mrs. Flora testified for the appellee. Their testimony follows. Klapproth is the president and general manager of the appellee corporation and Mrs. Flora is a stenographer in the office. It was Klapproth's responsibility to decide which bid was to be accepted. He did not at any time decide to accept the bid of the appellants, nor did he at any time authorize Mrs. Flora to sign the purchase order, nor did he subsequently ratify the purchase order. His instructions to Mrs. Flora were to get bids on Dodge, Chevrolet and Ford trucks. She did not know that Klapproth had also arranged to get a bid on an International Harvester truck and that the initial bid on that truck, which was the lowest of all, was on Klapproth's desk when she signed the purchase order with the appellants. She signed the order because she knew it was the general practice to give the order to the lowest bidder and the Ford bid was the lowest of the three which she had obtained.

Mr. Klapproth was out of town when the purchase order was signed. He learned about it the same day

and immediately called the appellants and told them "not to consider that they had an order until he reached a final decision." Shortly thereafter he notified appellants that he had decided not to give the order to them but to accept the bid of International Harvester, which was the lowest bid. On March 5, 1953, appellee sent to appellants the letter above quoted. In a letter dated March 25th to the appellants, Klapproth wrote that he had advised Jenkinson on February 26th "to withhold any action on the purchase order." Mrs. Flora did not have authority to sign a purchase order for a truck on her own initiative. She did have authority to sign purchase orders for office supplies.

Appellants contend that there was a binding contract between the parties which was not repudiated or breached by the appellee prior to passage of title and that they are entitled to a judgment in the amount of $2,358.95.

The trial judge found that Bulah Flora had the apparent authority to act for the appellee. He further found that the buyer, appellee here, notified the sellers, appellants here, of its intention to refuse to accept title to the truck, which amounted to a breach of contract, before the truck was finally and unconditionally appropriated to the contract by the appellants, with the assent of the appellee expressed or implied. As no damages had been proved, he entered judgment in favor of the appellants for one cent damages. From that judgment the appellants appeal.

The trial judge found that a valid contract was made and allowed the one-cent damages. The defendant, appellee, did not appeal and, therefore, the finding that a valid contract was made is conclusive on this appeal. *Lynch v. Kamanitz*, 148 Md. 381, 385, 129 A. 362. The question here presented is one only of the amount of damages.

The appellee contends that Code, 1951, Article 83, Section 82, Uniform Sales Act, as applied by the trial judge, governs the instant case and as there was no difference between the market price and the contract

price at the time the contract was repudiated, the damages awarded by the trial judge were adequate.

The appellants, on the other hand, contend that Code, 1951, Article 83, *supra,* Section 81(1),Uniform Sales Act, applies here. That section provides: "Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods." The question then arises as to whether the property or title to the truck passed to the appellee in this case.

It is provided by Code, 1951, Article 83, *supra,* Section 37: "Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passed to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the property does not pass until such thing be done. * * * Rule 4(1). Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller, with the assent of the buyer, or by the buyer, with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation made."

Specific goods are defined as "goods identified and agreed upon at the time a contract to sell or a sale is made." Future goods are defined as "goods to be manufactured or acquired by the seller after the making of the contract of sale." Fungible goods are defined as

"goods of which any unit is from its nature or by mercantile usage treated as the equivalent of any other unit." Code, 1951, Article 83, Section 94. Fungible goods are usually goods of a specific mass. Code, 1951, Article 83, Section 24. Unascertained goods are not defined in the Uniform Sales Act and apparently would include goods not in any of the preceding definitions.

Assuming, without deciding, as contended by the appellants, that the order covered specific goods, or in the alternative unascertained goods, the question arises as to whether the property in the truck ever passed to the buyer. If the truck was specific goods, under the contract something was bound to be done to it before it was in a deliverable state and, therefore, the property did not pass until such thing was done. If it was unascertained goods, before property passed it was necessary that the truck be unconditionally appropriated to the contract "with the assent of the buyer." Klapproth's statements, that on February 25th he notified appellants not to consider that they had an order for the truck until he reached a final decision, and that on February 26th he advised appellants to withhold action on the purchase order, was evidently accepted by the trial judge as the trier of facts. There is nothing to show how much, if any, of the work had been done before Klapproth first called.

There is no doubt that these statements did not amount to a definite and specific anticipatory breach or repudiation of the contract. It was said in *Friedman v. Katzner*, 139 Md. 195, 201, 114 A. 884: "A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract (*Williston, Contracts,* sec. 1288), and may be inferred from the 'refusal of a party to recognize the existence of a contract, or the doing of something inconsistent with its existence' (6 R. C. L., 1016), and when 'in anticipation of the time of performance, one definitely and specifically refuses to do something which he is obliged to do, so that it amounts to a refusal to

go on with the contract, it may be treated as a breach by anticipation, and the other party may, at his election, treat the contract as abandoned, and act accordingly. This principle is well settled and applied in many cases. * * *' [Cases cited.] But refusal to perform must be positive and unconditional, *Williston, Contracts,* sec. 1324; 39 Cyc. 1431." *Farmers' Phosphate Co. v. Gill,* 69 Md. 537, 16 A. 214; *Fast Bearing Co. v. Precision Development Co.,* 185 Md. 288, 309, 44 A. 2d 735; *Williston on Contracts,* (Revised Edition), Sec. 1324; *Corbin on Contracts,* Sec. 974; *Restatement of Contracts,* Sec. 318(a); *Wonalancet Co. v. Banfield, et al,* 116 Conn. 582, 165 A. 785; *Cory & Son, Ltd. v. City of London,* 2 All. Eng. 584 (KBD); *Goldwyn Distributing Corp. v. Brenneman,* (3rd Cir.), 13 F. 2d 105.

However, the burden was on the appellants to show that property in the truck had passed to the appellee. The appellants, in arguing that the appellee assented to the unconditional appropriation of the truck to the contract, rely on the following from *Williston on Sales,* (Rev. Ed., 1948), sec. 274: "The buyer rarely expresses his consent to an appropriation in definite words. On the contrary it is necessary to resort to inference from the terms and circumstances of the bargain." They also rely on the following from *Mariash on Sales,* (1930), sec. 147: "The buyer's assent will be presumed on very little evidence, and if the goods are actually picked out by the seller and set aside under the contract, slight evidence will be required to construe the consent on the buyer's part. Generally where the buyer orders the goods and expressly or impliedly gives the seller authority to choose them or set them aside that will be sufficient." It was held in *Canyon State Canners v. Hooks,* (1952), 74 Ariz. 70, 243 P. 2d 1023, that to constitute an appropriation the goods must be identified and applied irrevocably to the contract. Here even if consent on the part of the buyer is inferable from the contract, such consent was withdrawn before the goods were put in deliverable condition. The trier of

facts so found and we cannot say that he was clearly wrong.

As appellee repudiated and breached the contract before property passed, we are of opinion that Code, 1951, Article 83, Section 82, *supra,* applies to this case. This section provides:

"(1) When the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for non-acceptance.

"(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing approximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted; or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Although the appellants have not sold the truck, as stated by the trial judge, no damages have been proved. The appellee has not appealed from the judgment in favor of the appellants and against it for one cent damages. The judgment will be affirmed.

*Judgment affirmed. Costs in this Court to be paid by appellants.*