In re ASHBY ENTERPRISES, LTD., Luskins Appliances, Inc., Luskins, Inc., We–Are–Electronics, Inc., and Sound and Sight, Inc., Debtors.

Luskins, Inc., Plaintiff,

v.

Washington/Baltimore Cellular Limited Partnership, Defendant.

Bankruptcy Nos. 97–5–1887–JS, 97–5–1891–JS.
Adversary No. 97–5512–JS.

United States Bankruptcy Court, D. Maryland.

May 31, 2000.

Thomas M. Wood, IV, Baltimore, MD, for Plaintiff.

Eric B. Miller, Heather A. Klink, Piper Marbury Rudnick & Wolfe, LLP, Baltimore, MD, for Defendant.

*MEMORANDUM OPINION DISMISSING COMPLAINT WITH PREJUDICE*

JAMES F. SCHNEIDER, Bankruptcy Judge.

On February 13, 1997, Ashby Enterprises, Ltd., Luskins Appliances, Inc., Luskins, Inc., We–Are–Electronics, Inc., and Sound and Sight, Inc. filed voluntary Chapter 11 bankruptcy petitions in this Court. On October 3, 1997, Luskins, Inc. filed the instant amended complaint [P. 2] for breach of contract and an accounting against Washington/Baltimore Cellular Limited Partnership ("Cellular One"). On March 13, 1998, Cellular One filed a motion for summary judgment [P. 14]. On April 28, 1998, this Court entered an order [P. 26] denying defendant's motion on the grounds that summary judgment was inappropriate as a matter of law because general issues of material fact remained in dispute. This Court finds that Luskins breached the contract between the parties dated September 1, 1996, thereby excusing any further performance by Cellular One. Based upon the evidence presented at trial, the instant complaint will be dismissed.

## FINDINGS OF FACT

Cellular One is comprised of a network of authorized dealers who solicit and enroll subscribers in cellular telephone service plans. Dealers earn commissions at the time a subscriber is activated and based upon a percentage of air time charges billed to the subscriber. On February 13, 1991, Luskins entered into an Authorized Dealer Agreement (the "Prior Agreement") with Southwestern Mobile Systems, Inc., as managing agent for Cellular One. After several years of successful Cellular One sales, Luskins began selling the more competitive wireless products and services of Sprint Spectrum. As a result, Luskins's Cellular One sales declined. In an effort to reinvigorate its sales, Cellular One offered dealer incentives [1] in an effort to encourage its dealers,

---

1. The incentives of Cellular One consisted of sales force training and references to authorized dealers in Cellular One's advertising.

including Luskins, to sell Cellular One products and services exclusively.

In the summer of 1996, Stephen F. Sitton, President and General Manager of Cellular One, negotiated a new dealer agreement with Cary Luskin, president of Luskins, Inc. The Authorized Premiere Dealer Agreement, dated September 1, 1996, (the "Agreement"), admitted into evidence as Plaintiff's Exhibit 1, provided:

1. Dealer will provide sufficient materials and advertising to actively promote Cellular One CRS. ¶ 4a.

2. Dealer agrees to advertize association with Cellular One CRS as an authorized dealer of Cellular One. ¶ 4j.

3. If Dealer is indebted to Cellular One, Cellular One may withhold commissions or apply to Dealer to satisfy Dealer's payment obligations. ¶ 7.

4. Cellular One shall have the right to terminate this Agreement effective upon written notice if Dealer sells all or substantially all of Dealer's inventory or assets other than in the ordinary course of business. ¶ 17B.

5. Except as expressly provided to the contrary herein, each term and condition of this Agreement, and any portion thereof, shall be considered severable. ¶ 20.

6. The terms, provisions, representations, and warranties contained in this Agreement that by their sense and context are intended to survive the performance thereof by either or both parties hereunder shall so survive the completion of performances and termination of this Agreement, including the making of any and all payments due hereunder. ¶ 29.

7. Cellular One will provide Dealer with $135,000 in Market Development Funds ("MDF") upon the signing of this Agreement. Dealer must spend a minimum of $1,000 per store out of MDF for new displays and Cellular signage. Cellular One will develop and produce each display. The remaining amount of the MDF will be used for a significant advertising blitz and promotion to reintroduce Dealer's cellular program in the Washington/Baltimore market. Cellular One will pay Dealer a bonus in the amount of $115,000 in January 1997. The balance of Dealer's Co–Op funds under the Prior Agreement of the parties is included in the funds and bonus described in this paragraph. No additional amount will be owing by Cellular One to Dealer for co-op advertising under the Prior Agreement. ¶ 7.

Soon after the Authorized Premiere Dealer Agreement was executed, Luskins began advertising that it was closing all of its stores and shutting down its business operations. Defendant's Exhibit 26. On November 28, 1996, Cellular One terminated its agreement with Luskins. Defendant's Exhibit 2.

At the end of the plaintiff's case, this Court granted the defendant's motion to dismiss, having found that Cellular One's payment to Luskins was contingent upon Luskins's performance under the Agreement. Because Luskins failed to advertise Cellular One's services and, ultimately, closed its stores, Cellular One was excused from any further performance under the contract.

Luskins contended that it was entitled to $135,000 in Market Development Funds and an additional $115,000 in a bonus from Cellular One, arguing that this amount represented a signing bonus that it was entitled to receive upon the execution of the Agreement. Luskins also argued that Cellular One breached the contract because it did not pay Luskins according to the terms of the Agreement.[2]

2. Luskins's complaint also requested that Cellular One be ordered to provide an accounting of past residual payments and future residuals. At the time of trial, this count was no longer an issue because Cellular One had provided such an accounting to Luskins during discovery.

**72**

### CONCLUSIONS OF LAW

■ Maryland law defines a breach of contract as "a failure without legal excuse to perform any promise which forms the whole or part of a contract. . . ." *Connecticut Pizza, Inc. v. Bell Atlantic–Washington, D.C., Inc. (In re Connecticut Pizza, Inc.)*, 193 B.R. 217, 225 (Bankr.D.Md.1996) (Keir, J.) (*quoting Weiss v. Sheet Metal Fabricators, Inc.*, 206 Md. 195, 110 A.2d 671, 675 (1955)). The question, then, is whether Cellular One was legally excused from the performance of its obligations under the contract.

■ A party to a contract may be excused from performance when the contract requires a condition precedent. Where a contractual duty is subject to a condition precedent, there is no duty of performance and there can be no breach by nonperformance until the condition is either performed or excused. *Laurel Race Course, Inc. v. Regal Construction Company, Inc.*, 274 Md. 142, 333 A.2d 319 (1975); *Shoreham v. Randolph Hills, Inc.*, 248 Md. 267, 276, 235 A.2d 735 (1967); *Barnes v. Euster*, 240 Md. 603, 606, 214 A.2d 807 (1965). In *Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555, 557 (1973), the Court of Appeals of Maryland defined a condition precedent " 'as a fact, other than a mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises,' 17 Am. Jur.2d, Contracts § 320. Similar definitions may be found in *Bergman v. Parker*, 216 A.2d 581, 583 (D.C.App.1966); *In re Roberts' Estate*, 190 Kan. 248, 373 P.2d 165, 171 (1962); Corbin, Conditions in the Law of Contracts, 28 Yale L.J. 739, 747 (1919); 1 Restatement of Contracts, § 250 (1932); and 3A Corbin, Contracts, § 628 (1960)." *See also, Gilbane Building Co. v. Brisk Waterproofing Co., Inc.*, 86 Md.App. 21, 26, 585 A.2d 248, 250 (1991); *Foodmaker, Inc. v. Denny*, 32 Md.App. 350, 354–355, 360 A.2d 446, 449 (1976).

Luskins contended that no condition precedent existed. Cellular One countered that the $135,000 in market development funds and the $115,000 bonus were contingent upon Luskins performing under the contract. The issue is therefore whether the payment of the money under Paragraph 7 of Exhibit C to the Agreement was conditioned upon the occurrence of a particular event.

■ "The question whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in the case of ambiguity, after resort to the other permissible aids of interpretations, 17A C.J.S. *Contracts* § 338; *see United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir.1963), cert. denied, 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964)." *Gilbane Building Co.*, 86 Md.App. at 26, 585 A.2d at 250; *Foodmaker, Inc.*, 32 Md.App. at 354–355, 360 A.2d at 449.

■ Maryland adheres to the objective interpretation of contracts. *See Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444 (1999); *Calomiris v. Woods*, 353 Md. 425, 435, 727 A.2d 358, 363 (1999); *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298, 304 (1996); *Aetna Cas. & Sur. v. Insurance Comm'r*, 293 Md. 409, 420, 445 A.2d 14, 19 (1982). When clear and unambiguous language is used in a contract, the Court will not consider what the parties thought the contract meant or intended it to mean, but rather, what a reasonable person in the position of the parties would have thought it meant. *See, Auction & Estate Rep.*, 354 Md. at 340, 731 A.2d at 444; *Adloo*, 344 Md. at 266, 686 A.2d at 304; *GMAC v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985); *Creamer v. Helferstay*, 294 Md. 107, 127, 448 A.2d 332 (1982); *Gilbane Bldg. Co.*, 86 Md.App. at 26, 585 A.2d at 251. Where the language of the contract is unambiguous, the Court will consider only its plain meaning. *Aetna Cas. & Sur.*, 293 Md. at 420, 445 A.2d at 19; *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 345, 322 A.2d

866, 873 (1974). A contract is ambiguous if it is vulnerable to more than one meaning by a reasonably prudent person. *Auction & Estate Rep.*, 354 Md. at 340, 731 A.2d at 444–445. *See also, GMAC v. Daniels,* 303 Md. 254, 492 A.2d 1306 (1985).

It is clear from the contract that Luskins agreed to advertise and promote Cellular One products and services and that Cellular One would provide market development funds for that purpose. Cellular One could terminate its contract with Luskins in writing if Luskins sold substantially all of its assets, and if Cellular One was owed any amounts by Luskins, Cellular One could withhold commissions or other amounts owed to Luskins to satisfy the debt.

However, several provisions of the contract were ambiguous. Under the Agreement, Cellular One was to provide $115,-000 in January, 1997, which both parties characterize as a "bonus." The contract did not give any instructions regarding payment of this bonus and whether the occurrence of some event would alter Cellular One's obligation. In addition, the sentence, "The balance of the Dealer's Co-op funds under the Prior Agreement of the parties is included in the funds and bonus described in this paragraph," renders the whole paragraph ambiguous. A reasonable person could conclude from the provision as a whole that marketing funds and a bonus were promised to Luskins in exchange for signing the contract and promoting Cellular One services. A reasonable person could also conclude that part of the total to be given to Luskins for these purposes was already owed to it under the parties "Prior Agreement," for some other purpose.

■■■■ In interpreting a contract, the Court "places itself in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and to judge of the meaning of the words and the correct application of the language to the things described." *Canaras*, 272 Md. at 352, 322 A.2d at 874 (1974)

(*citing Sorensen v. J.H. Lawrence Co.,* 197 Md. 331, 79 A.2d 382 (1951)). The Court must ascertain the intention of the parties if the language in the contract has been determined to be ambiguous. *Id.* When a question arises concerning the intent of the parties, extrinsic evidence may be admitted to assist the Court in comprehending the meaning of the contract. *Canaras,* 272 Md. at 350, 322 A.2d at 873 (*quoting, Sommers v. Dukes,* 208 Md. 386, 394, 118 A.2d 660, 664 (1955)). The Court may consider such factors as the "negotiations of the parties, the circumstances surrounding execution of the contract, the parties' own construction of the contract, and conduct of the parties." *Foodmaker, Inc.,* 32 Md.App. at 356, 360 A.2d at 450. *See also, Mascaro v. Snelling & Snelling,* 250 Md. 215, 228, 243 A.2d 1, 8, cert. denied, 393 U.S. 981, 89 S.Ct. 451, 21 L.Ed.2d 442 (1968).

■■■ Based upon the extrinsic evidence regarding the negotiations between the parties, the purpose surrounding the execution of the contract, and the conduct of the parties, the intended use of the $135,-000 in market development funds was to promote the services and products of Cellular One and not as payment under the Prior Agreement. In addition, the $115,-000 bonus was to be paid to Luskins conditioned upon its performance under the Agreement.

Luskins argued that $85,000 of the $135,000 that was to be paid as market development funds had been earned under the Prior Agreement and that it was not necessary to submit receipts for these funds because Cellular One had waived that requirement. However, the testimony of Cary Luskin contradicted that argument. Mr. Luskin was repeatedly asked whether Luskins had earned any of the $135,000 and each time he replied that none of the money had been earned. Therefore, the Court concludes that Cellular One did not owe Luskins anything under the Prior Agreement.

Additionally, Luskins' view of the market development payment differed from the terms of the contract and from that of Cellular One. Under the contract, Luskins was obligated to spend $1,000 per store in advertising from the funds. Luskins argued that the Agreement did not specify a time by which the advertising money had to be spent and that Cellular One breached the contract by failing to provide displays as required under the contract. Notwithstanding the contract provisions, Luskins failed to begin an advertising campaign for Cellular One's services but rather began advertising its store closing sales. Luskins' failure to advertise Cellular One's services and the subsequent liquidation of its stores completely frustrated the purpose of the Agreement. Accordingly, Luskins breached the Agreement with Cellular One.

By closing its stores, Luskins also breached the provisions regarding the $115,000 bonus, which the Court concludes was contingent on Luskins' performance under the contract, at least with respect to its start-up obligations. Negotiations between the parties demonstrated that they intended the bonus to be conditioned upon Luskins' performance. Plaintiff's Exhibit 5.

Luskins's argued that it was entitled to a bonus that, pursuant to the negotiations and to the Agreement, was characterized as a "startup bonus," even though Luskins made no effort to advertise Cellular One products. Because Luskins had sold substantially all of its assets, Cellular One validly terminated the Agreement approximately two months prior to the payment being due. Therefore, Luskins's failure to perform under the contract breached the Agreement and excused Cellular One's obligation to pay the $115,000 bonus.

3. Paragraph 8 of Exhibit C of the Agreement provides:

> (8) Cellular One will exchange any inventory, whenever possible, as long as it is in new condition, in the box, with all man-

Luskins also argued that Cellular One improperly setoff chargebacks on equipment that was issued to it pursuant to Paragraph 8 of Exhibit C of the Agreement.[3] The Court concludes that Cellular One's actions constituted recoupment, not setoff, and were therefore permissible. Notwithstanding the Court's finding, Luskins's second amended joint plan of reorganization, which this Court confirmed on November 26, 1997, expressly waived all potential claims for setoff under section 553 of the Code. Therefore, Luskins is barred from raising such a claim.

Based upon the foregoing reasons, the instant complaint will be DISMISSED WITH PREJUDICE.

ORDER ACCORDINGLY.

uals and accessories at current pricing. Cellular One will do a one time cleanup of existing samples and defective units to be returned within forty-five (45) days after execution of this agreement.