**CORSAIR SPECIAL SITUATIONS FUND, L.P., Plaintiff,**

v.

**ENGINEERED FRAMING SYS., INC., Defendants.**

Case No. PWG–09–1201.

United States District Court,
D. Maryland,
Northern Division.

March 16, 2010.

Robert Scott Brennen, Miles and Stockbridge PC, Baltimore, MD, Jessica A. Duhoffmann, Matthew S. Sturtz, Miles and Stockbridge PC, Towson, MD, for Plaintiff.

Edward W. Chang, Thomas Vecchio, Dilworth Paxson LLP, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses the Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment, Paper Nos. 25 & 25–1, that Plaintiff Corsair Special Situations Fund, L.P ("Corsair") filed on September 29, 2009; Defendants' Amended Response to Plaintiff's Motion for Summary Judgment and Defendants' Amended Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Paper Nos. 32 & 32–1, that Defendants Engineered Framing Systems, Inc. ("Engineered"), EFS Structures, Inc. ("EFS"), John J. Hildreth, and Marie N. Hildreth, filed on December 23, 2009; and Plaintiff's Supplemental Reply Memorandum in Support of Motion for Summary Judgment, Paper No. 33, filed on January 11, 2010.[1]

---

**1.** Defendants originally filed a Response to Plaintiff's Motion for Summary Judgment and Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Paper Nos. 26 & 26–2, on October 16, 2009; and Plaintiff filed a Reply Memorandum in Support of Motion for Summary Judgment, Paper No. 28, on October 28, 2009. The parties agreed to strike these filings in a December 4, 2009 telephone conference that was memorialized in a December 7, 2009 letter order.

I find that a hearing is unnecessary in this case. *See* Local Rule 105.6. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. This Order disposes of Paper Nos. 25, 32, and 33.

## I. BACKGROUND

In an earlier action commenced on August 10, 2006, Plaintiff filed a Complaint against Defendants, alleging that they defaulted on a commercial loan that Plaintiff had provided. Pl.'s Mem. 2; *Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, No. WDQ–06–cv–2081 (D.Md. 2006) (the "Note Action"). On May 8, 2007, the parties settled the Note Action with a Settlement Agreement and General Release ("Settlement Agreement") that provided that Defendants would pay Plaintiff a total of $5,000,000, in four installations. Settlement Agreement 1, 3, Pl.s' Mem. Ex. B, Paper No. 25–3. On January 9, 2008, because Defendants were delayed in their final two payments, totaling $4,875,000, the parties entered into a First Amendment to Settlement Agreement and General Release ("First Amendment" or "1st Am."), which extended the deadlines for Defendants' outstanding payments, reduced the final payment, and added interim payments. 1st Am. 2 ¶ 1(a), Pl.'s Mem. Ex. C, Paper No. 25–4. As amended, payments of $75,000 were due at the end of each month from January 2008 through May 2008, and a payment of $4,500,000 was due on June 30, 2008, for a total of $4,875,000. *Id.*

In addition, Defendants "agree[d] to produce to Corsair a bona fide commitment letter from a third-party lender or investor on or before 3/31/08, reflecting a commitment on the part of the third-party lender or investor to fund, at a minimum, the final payment due under th[e] First Amendment," and "to produce draft loan documents or documents reflecting a binding agreement to invest in Engineered or [EFS] on or before 4/30/08." 1st Am. 5 ¶ 10. The First Amendment stated that failure to produce these documents would be a default of the First Amendment. It also provided that, if Defendants did not make their payments, Plaintiff would notify Defendants in writing, and upon receiving notice, Defendants would "have ten (10) business days from the date of receipt to cure said non-payment," or Plaintiff would "be entitled to declare Default." *Id.* at 4 ¶ 5(a).

In addition, in exchange for "additional collateral security," Plaintiff agreed "to provid[e] a subordination of their position against the assets of EFS Structure to an interim lender...."[2] *Id.* at 1 ¶ 5. With regard to the additional security, the First Amendment identified Patent No. 7,299,-596 (the "Patent"), which Defendant John Hildreth had received on November 27, 2007. *Id.* at 3 ¶ 2. The First Amendment provided:

a. For good, valuable and sufficient consideration, John J. Hildreth hereby grants to Corsair a security interest in all rights, title and interest in and to the Patent and to any and all inventions and improvements described or claimed in the Patent, any and all foreign applications or filings of the Patent, all licenses, royalties, damages, claims and payments now or hereafter due and/or payable under or with respect to the Patent including, without limitation, damages and

Paper No. 31. This case has been assigned, with consent of the parties, to the undersigned for all proceedings, including entry of a final judgment. Paper No. 19.

2. The May 8, 2007 Settlement Agreement authorized Plaintiff, "in accordance with the Loan Agreement, to file a UCC Financing Statement which, among other things, describes its collateral as all of the assets of [EFS] wherever located." 1st Am. 6, ¶ 13.

payments for past and future infringements of the Patent (the "Intellectual Property") as collateral security for prompt payment of Engineered's present indebtedness as defined in the Settlement Agreement all as more fully set forth in a Patent Security Agreement of even date herewith from John J. Hildreth in favor of Corsair, a copy of which is set forth on Exhibit A which shall be executed simultaneously with this Agreement.

b. The foregoing security interest is a present grant of a security interest and only upon the occurrence of the nonpayment of any of the settlement amounts due under the Settlement Agreement as amended hereby, or any other default under the Settlement Agreement shall the security interest become an absolute assignment to Corsair or others, and Corsair is hereby granted an irrevocable power of attorney to so designate such absolute assignment on the records of the U.S. Patent and Trademark Office upon any such default.

1st Am. 3 ¶ 2(a)-(b). Also, the First Amendment provided that Defendant John Hildreth had not used and would not use "the Patent or other Intellectual Property as collateral or security for any loan, financial obligation, or any other purpose without Corsair's express written consent, which shall not be unreasonably withheld." *Id.* at 3 ¶ 4. Further, even with consent, Hildreth would only use the Patent to secure a loan to "be used, at least in part, to satisfy the payment obligations set forth in [the First Amendment]." *Id.* The Patent Security Agreement, dated December 20, 2007, provided:

> The Borrower [i.e., John Hildreth] hereby irrevocably pledges and assigns to, and grants the Secured Party [i.e., Corsair] a security interest (the "Security Interest") with power of sale to the extent permitted by law, in the Patents whether or not registered with the U.S. Patent and Trademark Office to secure payment of the Obligations [i.e., debts that Defendants owed Plaintiff]. As set forth in the Settlement Agreement, the Security Interest is coupled with a security interest in substantially all of the personal property of the Borrower. This Agreement grants only the Security Interest herein described, is not intended to and does not affect any present transfer of title of any patent or application.

1st Am. Ex. A at 2 ¶ 2.

As for subordination of Plaintiff's "position against the assets of EFS Structure," 1st Am. 1 ¶ 5, the First Amendment provided:

> Corsair agrees to subordinate its lien position from time to time on terms which shall be fully satisfactory to Corsair in its sole discretion, which agreement will not be unreasonably withheld, to enable EFS to obtain receivable/factoring financing *expressly provided that, Corsair will receive ten (10) percent on the initial receivable/factoring financing and twenty-five (25) percent of the proceeds obtained by EFS from any subsequent receivable/factoring financing (the "New Loan Proceeds Payments") to which Corsair agrees to subordinate (the "New Loan").* EFS shall use the balance of the proceeds from the New Loan for working capital for its business to stabilize the company and permit long term replacement financing in order to pay off Corsair and other creditors . . . .

1st Am. 2 ¶ 1(b) (emphasis added).

EFS indeed sought to obtain Corsair's agreement to subordinate its lien to enable EFS to obtain receivable factoring financing. Shlomit Ophir–Harel, Chief General Counsel for Platinum Funding Services, LLC ("Platinum"), a third-party lender, e-

mailed Paul Hahn, counsel for Corsair on January 8, 2008:

[A]ttached are the factoring agreement and the purchase and sale agreement, which were forwarded to EFS, for execution. Kindly forward me the executed settlement agreement between Corsair and EFS. Once you advise me that Corsair is willing to subordinate the accounts receivable to Platinum, I will forward you a subordination agreement.

Defs.' Am. Mem. Ex. B, Paper No. 32–8. Although the e-mail does not appear to have had any attachments, *see id.,* Ronald Buck and Charles Cheever, managing members of Corsair Holdings, LLC, the General Partner of Corsair, acknowledged that Platinum sent an unsigned factoring agreement to Corsair in early 2008. Aff. of Ronald J. Buck ¶ 12, Pl.'s Mem. Ex. A, Paper No. 25–2; Charles Cheever Dep. 39:7–9, 15–16, Nov. 17, 2009, Defs.' Am. Mem. Ex. C, Paper No. 32–9; *see* Defs.' Am. Mem. Ex. 5 to Ex. A ("Factoring Agreement"), Paper No. 32–7. The Factoring Agreement stated that EFS "will tender to Platinum certain of Seller's [i.e., EFS's] invoices to be rendered to Seller's customers ('Account Debtors') with respect to goods sold and delivered to, or services performed for, such Account Debtors by Seller (individually, an 'Account Receivable' and collectively, the 'Accounts Receivable')," and "Platinum ... will notify Seller as to which of the individual Accounts Receivable so tendered, if any, Platinum elects to purchase." Factoring Agreement 1. Corsair did not respond to the Factoring Agreement or the e-mail. Cheever Dep. 40:4–6.

On April 11, 2008, Plaintiff's counsel informed Defense counsel in writing that Defendants were "in material breach of the Settlement Agreement for, among other things, failure to make payment to [Plaintiff] and failure to deliver a bona fide commitment letter from a third-party lender or investor." Pl.'s Mem. Ex. D, Paper No. 25–5. Defendants did not cure the alleged breach within ten days of the notice, and Plaintiff declared Defendants in default. Pl.'s Mem. 11 & Ex. E, Paper No. 25–6. Plaintiff filed an Assignment of Patent with the United States Patent and Trademark Office on May 22, 2008, which Defendants contested, claiming they were not in default because Plaintiff previously had breached the First Amendment. Pl.'s Mem. 11 & Ex. E–F, Paper Nos. 25–6–25–7.

Plaintiff then filed the underlying Complaint initiating this action, alleging that Defendants "defaulted under the Settlement Agreement and First Amendment by failing to make the required payments to Corsair and by failing to provide Corsair with a binding commitment letter and corresponding loan/investment documents." Compl. ¶ 28, Paper No. 1. Defendants admitted in their Answer that they "did not make any payments under the First Amendment," Answer ¶ 18, Paper No. 15, and that they "did not provide a 'binding commitment letter,'" *id.* ¶ 20. But, Defendants denied that they failed to "provide loan/investment documents to Corsair," *id.* ¶ 20, or "defaulted under the Settlement Agreement and First Amendment," *id.* at ¶ 28. Defendants reasoned that they had not defaulted because, in their view, Plaintiff failed to perform its obligation "to reasonably subordinate its lien position to enable [Defendants] to obtain receivable/factoring financing in order to pay its debt to Corsair." *Id.* ¶ 20. According to Defendants, due to Plaintiff's purported refusal to subordinate, Defendants lost their financing and therefore could not secure the necessary documents or make payments. *Id.* ¶¶ 18 & 20.

Plaintiff moved for summary judgment on September 29, 2009, contending that "[t]here is no dispute of material fact that Defendants failed, as alleged, to make the

required payments and to provide the binding commitment letter and corresponding loan/investment documents," and therefore "Corsair is entitled to judgment as a matter of law." Pl.'s Mot. ¶ 3. Plaintiff seeks a monetary judgment of $5,000,000; a declaration that Plaintiff "is the lawful assignee and owner of the Patent and can assign, license or sell the Patent free and clear from any claims of Defendant John J. Hildreth"; a declaration that Mr. Hildreth "has no rights in the Patent or to use the patented technology"; and a permanent injunction to enjoin Defendants from using the Patent or the patented technology or representing that they had such rights. Pl.'s Mem. 12.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Meson v. GATX Tech. Servs. Corp.,* 507 F.3d 803, 806 (4th Cir.2007) (citing Fed.R.Civ.P. 56(c)). The moving party bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir.1987). The Court considers the evidence in the light most favorable to the non-moving party. *Ricci v. DeStefano,* —— U.S. ——, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009); *George & Co., LLC v. Imagination Entm't Ltd.,* No. 08–1921, 575 F.3d 383, 391–92 (4th Cir.2009); *Dean v. Martinez,* 336 F.Supp.2d 477, 480 (D.Md.2004).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *Anderson v.* *Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Id.* at 251, 106 S.Ct. 2505. Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

Moreover, to be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence. *See* Fed.R.Civ.P. 56(c); *see also Sakaria v. Trans World Airlines,* 8 F.3d 164, 171 (4th Cir.1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment); *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1315–16 (4th Cir.1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof in the form of admissible evidence that could carry the burden of proof in his claim at trial."). With regard to documentary evidence, this Court previously has held that "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)-that the documents be admissible in evidence." *Miskin v. Baxter Healthcare Corp.,* 107 F.Supp.2d 669, 671 (D.Md.1999) (citing *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993)).

## III. DISCUSSION

 " 'A settlement agreement is a contract which the parties enter into for the settlement of a previously existing claim by a substituted performance.' "

*Hyundai Motor Am. v. Alley,* 183 Md.App. 261, 960 A.2d 1257, 1262 (2008) (citation omitted); *see MCI Constructors, Inc. v. Hazen & Sawyer, P.C.,* Nos. 1:99CV2, 1:02CV396, 2009 WL 1173041, at *5 n. 12 (M.D.N.C. April 28, 2009) ("a settlement agreement is a contract"); *Lewis v. Potter,* No. 1:05CV34, 2007 WL 419374, at *7 (N.D.W.Va. Feb. 2, 2007) (same). Applying Maryland law, this Court "adheres to the principle of the objective interpretation of contracts," and because there is no assertion of ambiguity, this Court "give[s] effect to [the contract's] plain meaning...."[3] *Cochran v. Norkunas,* 398 Md. 1, 919 A.2d 700, 709 (2007).

■ A breach of contract is " 'a failure without legal excuse to perform any promise which forms the whole or part of a contract....' " *In re Ashby Enters., Ltd.,* 250 B.R. 69, 72 (Bankr.D.Md.2000) (quoting *Connecticut Pizza, Inc. v. Bell Atlantic–Washington, D.C., Inc.,* 193 B.R. 217, 225 (Bankr.D.Md.1996)) (quoting *Weiss v. Sheet Metal Fabricators, Inc.,* 206 Md. 195, 110 A.2d 671, 675 (1955)). Notably, "a material breach by one party to a contract excuses the other party from performance." *Final Analysis Comm'cn Servs. v. Gen. Dynamics Corp.,* 253 Fed.Appx 307, 313 (4th Cir.2007); *see Bollech v. Charles County, Maryland,* 166 F.Supp.2d 443, 458 (D.Md.2001) ("[A] material failure of performance by one party 'prevents performance [of the other party's remaining duties] from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur.' ") (citation omitted).

■■ Of import, "[a] condition precedent in a contract is 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of imme-

diate performance of a promise arises.' " *All State Home Mortgage, Inc. v. Daniel,* 187 Md.App. 166, 977 A.2d 438, 447 (2009) (quoting *Chirichella v. Erwin,* 270 Md. 178, 310 A.2d 555, 557 (1973) (citation and quotation marks omitted)). Further, if an express or implied condition precedent applies to a contractual term, "there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused." *Id.* (citations and quotation marks omitted).

**A. The Breaching Party**

■ As noted, the Settlement Agreement and First Amendment state that Defendants will make payments to Plaintiff and produce a bona fide commitment letter from a lender or investor, as well as draft loan documents or documents that show a binding agreement for a third party to invest in Engineered or EFS. 1st Am. 2 ¶ 1(a), 5 ¶ 10. Also, to enable Defendants to obtain financing to make payments to Plaintiff, the documents provide that Plaintiff will subordinate its lien on EFS's assets, but only when given "fully satisfactory" terms that include payment to Plaintiff of a percentage of the financing proceeds. 1st Am. 2 ¶ 1(b). It is undisputed that Defendants neither made payments under the First Amendment nor produced a bona fide commitment letter. *See* Compl. ¶ 28, Answer ¶¶ 18, 20. Therefore, Defendants failed to perform under the terms of the First Amendment. *See* 1st Am. 2 ¶ 1(a), 5 ¶ 10. But, if Plaintiff materially breached the First Amendment before Defendants failed to perform, Defendants' duty to perform was discharged. *See Final Analysis Comm'cn Servs.,* 253 Fed.Appx. at 313; *Bollech,* 166 F.Supp.2d at 458.

**3.** The Settlement Agreement provides that it "shall be governed, construed, and interpreted in accordance with the substantive and procedural laws and rules of the State of Maryland." Settlement Agreement ¶ 25.

Corsair claims it did not refuse to subordinate its lien, relying on Buck's characterization of the Factoring Agreement as "shelf documents" that lacked the specific terms that the First Amendment required and led Corsair to "assume[ ] that Platinum had decided not to go forth with accounts receivable financing," Buck Aff. ¶ 12, and Cheever's testimony that while he did not authorize Corsair's attorney to respond to Ophir–Harel's e-mail concerning the factoring agreement, he also did not prohibit him from doing so, Cheever Dep. 38:16–17. EFS insists that Corsair did refuse, noting that in the Affidavit of John J. Hildreth, the Operations President and General Manager of EFS, Hildreth stated that "Charles Cheever called [Hildreth] in early January to inform [Hildreth] that Corsair would not subordinate its lien position." [4] Hildreth Aff. ¶ 28, Defs.' Am. Mem. Ex. A, Paper No. 32–2. However, as explained *infra*, this disagreement does not create a triable factual dispute.

To oppose Plaintiff's motion for summary judgment successfully, Defendants must produce evidence that raises a genuine dispute, not over whether Plaintiff refused to subordinate its lien, but rather over whether any refusal, if proved, was unreasonable. Defendants contend that "[w]hether a party complies with a contractual obligation to carry out its duties reasonably is a question of fact," best left to the fact-finder. Defs.' Am. Mem. 8 (citing *Baron Fin. Corp. v. Natanzon,* 509 F.Supp.2d 501 (D.Md.2007); *FDIC v. Rodenberg,* 571 F.Supp. 455, 461 (D.Md. 1983)). While this may be true as a general principle, it is not an absolute. *See Baron Fin. Corp.,* 509 F.Supp.2d at 515

(stating that "a 'best efforts' assessment," which it equated to a reasonableness determination, "is *generally* a matter of fact and not law") (emphasis added); *Envtl. Elements Corp. v. Mayer Pollock Steel Corp.,* 497 F.Supp. 58, 61 (D.Md.1980) (stating that reasonableness, in the context of a "reasonable time" to provide notice of breach, "is *ordinarily* a question of fact based upon all the surrounding circumstances") (emphasis added); *Murphy v. 24th St. Cadillac Corp.,* 353 Md. 480, 727 A.2d 915, 922 (1999) (noting that "[q]uestions of reasonableness are *ordinarily* for the trier of fact") (emphasis added).

Moreover, this dispute stems from allegations of breach of contract and, while reasonableness determinations are generally questions of fact, they are an exception to the rule that "contract interpretation is generally a question of law" for the Court to resolve. *Trimed, Inc. v. Sherwood Med. Co.,* 772 F.Supp. 879, 885 (D.Md.1991). Here, as a matter of law, I find that a condition precedent existed to Plaintiff's duty to perform. *See id.; All State Home Mortgage,* 977 A.2d at 447. Specifically, Corsair's duty to subordinate its lien would not arise until it was presented with both a request to subordinate to a receivables/factoring agreement and a promise that Corsair would "receive ten (10) percent on the initial receivable/factoring financing and twenty-five (25) percent of the proceeds obtained by EFS from any subsequent receivable/factoring financing." 1st Am. 2 ¶ 1(b). Notably, neither *FDIC,* 571 F.Supp. 455, nor *Baron Financial Corp.,* 509 F.Supp.2d 501, addressed the determination of whether a party reasonably performed a contractual duty for

---

**4.** Hildreth's Affidavit is admissible for summary judgment purposes, as Rule 56 specifically allows the use of affidavits to support or oppose a motion for summary judgment. Fed.R.Civ.P. 56(a)-(c), (e)(1). Further, because Cheever, as a managing member of Corsair holdings, LLC, the General Partner of Corsair, is an agent of Corsair, his statement to Hildreth is an admission, *see* Fed.R.Evid. 801(d)(2)(C) and (D), and therefore not hearsay.

which there was a condition precedent: In *FDIC*, 571 F.Supp. at 461, the Court considered what constitutes a "commercially reasonable" disposition of property; and in *Baron Financial Corp.*, 509 F.Supp.2d at 506, the issue concerned not reasonableness, but rather a provision in a settlement agreement for one party to " 'use his best efforts to maximize the profitability' " of a company.

■ Further, when the undisputed facts support only one inference, the question is a matter of law for the Court to decide. *Envtl. Elements Corp. v. Mayer Pollock Steel Corp.*, 497 F.Supp. 58, 61 (D.Md. 1980) (citing *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 327 A.2d 502, 512 (1974), wherein the Court said that when "the facts are undisputed and but one inference can be drawn therefrom as to the reasonableness of the notice [of rejection of breach of contract], the question is one of law"). Although Defendants argue that Platinum's offer was "exactly the financial arrangement that was contemplated by the parties in order to allow [Defendants] to meet their payment obligations," Defs.' Am. Mem. 7, Defendants have failed to show that the factoring agreement or the e-mail accompanying it contained terms providing for Corsair to receive a percentage of the proceeds from the agreement, as the express condition precedent required.

As noted, Defendants offer the Affidavit of John J. Hildreth. Defs.' Am. Mem. Ex. A. Hildreth attached to his Affidavit "the relevant correspondence and draft agreements," *id.* ¶ 26, which amounted to the Settlement Agreement; an evaluation of the Patent; a September 11, 2007 Term Sheet for an Intellectual Property Term Loan and an Accounts Receivable Line of Credit sent to John Hildreth from U.S. Capital Corporation; the First Amendment; and an e-mail that John Hildreth sent to Defense counsel on September 30, 2009. Hildreth Aff. Ex. 1–5, Paper Nos. 32–3–32–7. The e-mail did not contain a message. *Id.* Attached to it were unsigned "revised agreements" that Hildreth received from Platinum on January 2, 2008, including a Performance Guaranty between Hildreth and Platinum; a Performance Guaranty between Platinum and Robert Condon, the President of EFS; a Security Agreement between EFS and Platinum; a Purchase and Sale Agreement between EFS and Platinum, for sale of EFS's Accounts Receivable; a Factoring Agreement between Platinum and EFS; and a Corporate Certificate of EFS. *Id.* None of these documents proposed terms for Plaintiff to receive a share of the proceeds from financing. 1st Am. 2 ¶ 1(b).

Defendants also offer Shlomit Ophir–Harel's January 8, 2008 e-mail, which accompanied the receivables/factoring agreement, and an excerpt from Charles Cheever's deposition. Defs.' Am. Mem. Ex. B–C. While it is true that in her e-mail, Ophir–Harel asked to be advised when "Corsair is willing to subordinate the accounts receivable to Platinum," Corsair had already stated, within the First Amendment, that it was willing to subordinate and, more significantly, that its subordination was contingent on terms that it found satisfactory and that included a provision that Corsair would receive a percentage of the proceeds. *See* 1st Am. 2 ¶ 1(b). And, neither Cheever in his deposition testimony, nor Ophir–Harel in her e-mail, stated that Corsair would receive a percentage of the proceeds from the agreement.

As Plaintiff rightly observes, Platinum provided "unexecuted boilerplate documents ... that not only fail to provide any of the details regarding the accounts receivable that purportedly were to be financed ... but also fail to satisfy the express and unequivocal terms of the First

Amendment's subordination provision." Pl.'s Am. Reply 3. Plaintiff claims that if Defendants and Platinum were negotiating financing of the magnitude that Defendants suggest, then there "must exist" communications among Defendants, Platinum, and Corsair, beyond the scant documents Defendants produced. *Id.* Plaintiff concludes that "either ... no such documentation exists or ... Defendants know the documentation does not support their purported defense in this case." *Id.* Defendants offer neither testimony nor an affidavit from Platinum or a representative of either party stating that there was an oral agreement that satisfied the terms of the First Amendment. Thus, the evidence before the Court does not include terms that satisfy the condition precedent, or even a reference to an oral discussion of such terms. The undisputed facts support only one inference—that Defendants did not meet the express condition precedent, and I find this to be the case as a matter of law. *See Envtl. Elements Corp.*, 497 F.Supp. at 61.

Even assuming, arguendo, that Corsair refused to subordinate, no reasonable jury could find that Corsair's refusal to subordinate was "unreasonable" when, under the undisputed facts before this Court, the condition precedent to Corsair's subordination was not met, such that Corsair had no duty to subordinate. *See All State Home Mortgage*, 977 A.2d at 447. Put another way, the reasonableness *vel non* of Corsair's refusal (if it did refuse) does not come into issue until Corsair receives a request to subordinate its lien to a factoring agreement that meets the specific condition precedent that the agreement between Corsair and EFS. Thus, under these facts, the reasonableness of Corsair's action is not a question of fact, and even if Corsair refused, the refusal was not unreasonable as a matter of law. *See id.*

Therefore, Plaintiff did not unreasonably refuse to subordinate its lien, in breach of the Settlement Agreement or First Amendment. Consequently, when Defendants failed to perform, they were in breach of the contract. *See In re Ashby Enters., Ltd.*, 250 B.R. at 72; *Connecticut Pizza, Inc.*, 193 B.R. at 225; *Weiss*, 110 A.2d at 675.

### B. Patent Assignment

■ Plaintiff claims that it became "the beneficiary of an absolute assignment of Mr. Hildreth's rights in the patent" because Defendants purportedly breached the First Amendment. Pl.'s Mem. 9 (initial capitals omitted). Plaintiff insists that its rights in the Patent are not conditioned "upon a finding by the Court that Defendants are in default." Pl.'s Am. Reply 7. But, as Defendants see it, because "Corsair has not yet established that [Defendants] are in default of the First Amendment," Corsair is not the beneficiary of an absolute assignment of the patent. Defs.' Am. Mem. 10. Noting that an agreement to assign rights in a patent in the future is distinct from a present assignment of rights in a patent, Defendants argue that "the First Amendment and Patent Security Agreement must be characterized as an agreement to assign in the future which is not sufficient to prove that the Patent has been assigned to Corsair." Defs.' Am. Mem. 10–11. But, noting that Plaintiff's "security interest in Mr. Hildreth's patent becomes an absolute assignment after a showing of a default of the First Amendment," *id.* at 10, Defendants concede: "If, and only if, Corsair is successful in this litigation, it becomes the lawful assignee of U.S. Patent No. 7,299,596," *id.* at 11.

This Memorandum and Order concludes that Defendants defaulted on the Settlement Agreement and First Amendment. The First Amendment provided to Corsair

"a security interest in all rights, title and interest in and to the Patent" as "a present grant of a security interest" that would "become an absolute assignment to Corsair or others" if Defendants failed to pay "any of the settlement amounts due under the Settlement Agreement as amended hereby, or any other default under the Settlement Agreement." 1st Am. 3 ¶ 2(a)-(b). Because Defendants failed to make the payments required under the First Amendment and did not provide a bona fide commitment letter and thereby defaulted on the Settlement Agreement and First Amendment, the security interest in the Patent has become an absolute assignment of the Patent to Corsair. *See* Md. Code Ann., Com. Law §§ 9–201(a), 9–601(a).[5]

Defendants nonetheless contend that, in accordance with the U.S. Patent Code, even if Plaintiff is entitled to an absolute assignment of the Patent, Defendants should be precluded only from using the patented technology within the United States because "the U.S. Patent [Plaintiff] seeks to own does not provide it with such protections." Defs.' Am. Mem. 12. Plaintiff counters that "Defendants no longer have any right to use the Patent," because the First Amendment assigned to Plaintiff "any and all foreign applications or filings

of the Patent. . . ." Pl.'s Am. Reply 9 (quoting 1st Am. ¶ 2(a)).

It is true that the patent "applicant, patentee, or his assigns or legal representatives may . . . grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States." 35 U.S.C. § 261. This limitation applies to assignment of rights under U.S. Patents. But that is not to say that an individual may not assign a foreign patent application or a foreign filing of a patent. The First Amendment states that John J. Hildreth assigned to Plaintiff "any and all foreign applications or filings of the Patent . . . ." 1st Am. ¶ 2(a). The language is unambiguous, and therefore its plain language is effective as to the parties to the agreement. *See Cochran*, 919 A.2d at 709. Therefore, Defendants are precluded from using the patented technology throughout the world.

## C. Relief

▇▇▇▇ Corsair, as the moving party, has established that it is entitled to judgment as a matter of law on the issue of liability. However, with regard to the monetary award sought, Plaintiff fails to identify and particularize the factual basis for such an award.[6] Additionally, to the extent that Plaintiff seeks a non-monetary

---

5. Patents "have the attributes of personal property" and "shall be assignable in law by an instrument in writing," 35 U.S.C. § 261, but United States patent law does not address the effectiveness of such an instrument between the parties. Article 9 of the Maryland Code ("Secured Transactions") applies to "[a] transaction, regardless of its form, that creates a security interest in personal property . . . by contract," provided that it is not preempted by any federal statute, treaty, or regulation. Md.Code Ann., Com. Law § 9–101(a)(1), (c)(1). Therefore, Article 9 governs this issue. *See* Com. Law § 9–101(c)(1). Under Article 9, "a security agreement is effective according to its terms between the par-

ties. . . ." Com. Law § 9–201(a). In addition, "[a]fter default, a secured party has the rights provided in [Subtitle 6] and . . . those provided by agreement of the parties"; the statutory rights include the right to "enforce the . . . security interest . . . by any available judicial procedure." *Id.* § 9–601(a).

6. Although Plaintiff seeks $5,000,000 in damages, Pl.'s Mem. 12, Plaintiff only alleges monetary damages from Defendants' default on the First Amendment, i.e., $4,875,000, Pl.'s Mot. ¶ 3; 1st Am. 2 ¶ 1(a); *see* Answer ¶ 18 (Defendants' admission that they failed to pay any of the amount due under the First Amendment).

award such as a declaration of rights and/or an injunction, summary judgment is not warranted at this time because Plaintiff has failed to provide any authority to show entitlement to this relief as a matter of law. For example, Plaintiff asks for a permanent injunction. Yet, Plaintiff does not make the required showing for such relief, i.e.,

> (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be dissolved by a permanent injunction.

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006); *see Nat'l League of Junior Cotillions, Inc. v. Porter*, No. 06–508–RJC–DSC, 2010 WL 143710, at *3 (W.D.N.C. Jan. 7, 2010) (quoting *eBay, Inc.* and noting that such a showing is required in a patent case). Nor has Plaintiff provided a sufficiently particularized showing of what declaratory relief is requested and the law supporting that relief. Accordingly, summary judgment on damages and other relief is unwarranted on the record presently before the Court.

If Plaintiff intends to seek remedies on summary judgment, it will within thirty (30) days provide the Court with a memorandum specifically identifying the relief requested, as well as the factual basis and controlling authority therefor. Defendants will respond within thirty (30) days, and Plaintiff may reply within fifteen (15) days. Thereafter, the Court will determine whether any further proceedings will be necessary in this case.

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.